## WELLS v. CITY OF SIOUX FALLS *et al.*

1. Const. art. 13, § 4, as amended in 1896, permitted cities, in addition to the 5 per cent. indebtedness originally allowed, to incur an additional indebtedness, when authorized by a majority vote of the electors, not exceeding 10 per cent. of the assessed value of taxable property, for the purpose of providing water for irrigation and domestic uses. Held, that the power to incur a 10 per cent. indebtedness for providing water was conferred regardless of existing indebtedness for other purposes.

2. A proposition, favorably acted on by the voters of a city, authorizing the issuance of bonds to the extent of $210,000 for a given purpose, conferred authority to issue such bonds in installments of less amounts as they became necessary.

(Opinion filed April 7, 1903.)

Appeal from circuit court, Minnehaha county. Hon. JOSEPH W. JONES, Judge.

Action by R. J. Wells against the city of Sioux Falls and others to prevent the sale of certain city bonds. From an order overruling a demurrer to answer, plaintiff appeals. Affirmed.

*Bailey & Voorhees*, for appellant.

*Hosmer H. Keith*, for respondents.

HANEY, P. J.   The object of this action is to prevent the sale of certain city bonds. The appeal is from an order overruling a demurrer to the answer.

When the case was called for oral argument, Park Davis, Esq., appeared as a friend of the court and moved to dismiss the appeal, alleging, in substance, that the action was collusively instituted, without any real dispute between the parties, for the purpose of obtaining a decision favorable to the validity of the bonds. After hearing numerous affidavits in support of, and in opposition to, the motion, and the able and exhaustive argument of counsel in relation thereto, the court concluded to allow Mr. Davis, and other counsel associated with him, to file printed briefs, and to participate in the oral argument upon the merits of the appeal, reserving its decision upon the motion to dismiss. Mr. Davis and his associates having declined to avail themselves of the offered opportunity to argue the merits of the appeal, and counsel of the parties to the action having been heard, the issues presented thereby were taken under advisement, together with the motion to dismiss.

It is not deemed necessary to reproduce the contents of the affidavits, or to review the authorities relating to the motion to dismiss. We do not believe that the parties to this action or their counsel intended to deceive or mislead either the court below or this court. The circumstances attending this litigation are not exceptional. An issue of city bonds was contemplated; their validity was in doubt; and, as is frequently done, an action was instituted, and speedily appealed, for the purpose of having an early determination of the legal questions involved. No issues of fact will be determined by any decision this court may render in this action. Persons who are not parties to it will not be precluded from establishing in another action a different state of facts from those presented by the pleadings in this. It is true that our decision may be-

come a controlling precedent as to the legal questions properly presented and determined on this appeal, but we see no impropriety in determining such questions after able and respected counsel, who earnestly oppose the issuance of these bonds, have been given an opportunity to be heard by printed briefs and in oral argument. Our decision will not extend beyond the issues of law raised by plaintiff's demurrer to the defendants' answer. If facts which render the proposed bonds invalid were omitted from the complaint in this action—and such was the contention of counsel in support of the motion to dismiss—no reason existed why any taxpayer, or other person having the requisite interest, might not have instituted another action wherein such facts could have been established. In view of the issues involved and all the circumstances as we understand them, without attempting to formulate a general rule applicable to motions of this character, we conclude that the appeal should not be dismissed or the action abated because of collusion between the parties.

Coming now to the merits, we observe that no material allegation of the complaint is denied, and that the only facts alleged in the answer, not found in the complaint, are (1) that the due and unpaid taxes and assessments made on the taxable property in the said city were and are sufficient to meet all of the outstanding warrants mentioned in the complaint, and (2) that a matority of the legal voters of said city voted in favor of issuing the bonds, at the special election on November 5, 1901, referred to in the complaint. Therefore the question arises whether these facts, taken in connection with the properly pleaded allegations of the complaint, constitute a defense to the cause of action therein alleged.

It appears from the complaint that Sioux Falls is a city of the first class; that the plaintiff is a citizen and taxpayer therein; that the defendants are the mayor, the auditor, and the aldermen thereof; that the electors thereof, at a special election on November 5, 1901, voted upon the proposition of issuing bonds to the extent of $210,000 for the purpose of providing water for domestic uses; that the auditor was, on December 1, 1902, directed by the council to advertise for bids for the sale of such bonds to the amount of $50,000: that the defendants intend to execute and sell said bonds if bids be received therefor, and that they intend to subsequently advertise for bids and to sell more of such bonds to the extent of $160,000; that the assessed value of all the taxable property within said city, as finally equalized, was $2,508,715 in 1901, and $2,715,737 in 1902; that on November 5, 1901, the bonded indebtedness of the city was $326,871, and its floating indebtedness, consisting of unpaid warrants, was $53,391.44; that the bonded indebtedness is now $326,265, the floating indebtedness $85,022.14; and that since November 5, 1901, the total indebtedness has never been less than $370,000.

Our state Constitution, as originally adopted, contained these provisions: "The debt of any county, city, town, school district or other subdivision, shall never exceed five per centum upon the assessed value of the taxable property therein. In estimating the amount of indebtedness which a municipality or subdivision may incur, the amount of indebtedness contracted prior to the adoption of this Constitution shall be included." State Const. art. 13, §4. This section was amended in 1896 to read as follows: "The debt of any county, city, town, school district, civil township, or other subdivision, shall never ex-

ceed five (5) per centum upon the assessed value of the taxable property therein.    In estimating the amount of indebtedness which a municipality or subdivision may incur, the amount of indebtedness contracted prior to the adoption of this constitution shall be included; provided that any county, municipal corporation, civil township, district or other subdivision may incur an additional indebtedness not exceeding ten per centum upon the assessed value of the taxable property therein for the purpose of providing water for irrigation and domestic uses; provided, further, that no county, municipal corporation or civil township shall be included within any such district or subdivision without a majority vote in favor thereof of the electors of the county, municipal corporation or civil township, as the case may be, which is proposed to be included therein, and no such debt shall ever be incurred for any of the purposes in this section provided; unless authorized by a vote in favor thereof of a majority of the electors of such county, municipal corporation, civil township, district or subdivision incurring the same."    The section was again amended in 1902, but not in any respect which affects the questions determined on this appeal.    We think the 1896 amendment conferred power to incur indebtedness to an amount not exceeding 10 per cent. upon the assessed value of the taxable property within a municipal corporation for the purpose of providing water for irrigation and domestic uses, regardless of existing indebtedness incurred for other purposes.    When it was adopted, there were numerous municipal corporations in this state whose indebtedness for general purposes exceeded the 5 per cent. limitation.    It should be presumed that the Legislature which proposed and the people who ratified the amendment were acquainted with the con-

ditions then existing.    If this be so, it would not be reasonable to infer that the change was intended to confer unequal benefits upon the public corporations affected thereby.    The existence of a large municipal debt does not render an adequate water supply less necessary or beneficial.    Indeed, the ability to provide pure water for domestic uses may become absolutely essential to the procurement and retention of a population sufficient to meet existing municipal obligations.    The Constitution of Utah contains provisions strikingly analogous to those under discussion.    Says the Supreme Court of that state: ''The limited restriction and the restricted grant to create indebtedness are essentially independent and distinct, and the general and special debts which they authorize are separated by their purposes and the separate powers under which they must be incurred.    This would clearly be the natural operation and effect of the two 4 per cent. limits in the absence of any contingency, such as a decrease in the valuation of the taxable property, which would cause the 4 per cent. of the valuation under the general power to be less than the indebtedness. But the happening of such a contingency cannot change the purpose and natural operation of the section, nor affect the special power under which the municipality in this case seeks to act." People v. City Council (Utah) 64 Pac. 460.    Concurring in the view thus clearly expressed, we cannot escape the conclusion that the validity of the bonds involved in this action is not affected by the defendant city's existing indebtedness for general purposes.

As it appears that the amount of the proposed bonds authorized by the vote of the people does not exceed 10 per cent. upon the assessed value of the taxable property within the

city as ascertained by the equalized assessment in either 1901 or 1902, the entire amount can be issued without exceeding the constitutional limitation upon municipal indebtedness.

The contention that the defendants are without power to issue these bonds to the amount of $50,000, because the proposition submitted to the voters provided for "issuing bonds to the extent of $210,000," is untenable, especially as it appears that they intend to issue the remaining portion as they may be required by the contemplated municipal improvement. The mere statement of the contention is sufficient to show its fallacy. It would be contrary to the dictates of reason to hold that the city authorities are bound to sell more bonds than are needed for the intended purpose, or that they are required to dispose of all of them at one and the same time.

Assuming the facts to be as presented by the pleadings in this action, we have no hesitancy in holding that the bonds mentioned in the complaint will, if sold, not be invalid because of the constitutional limitation upon municipal indebtedness, and that the circuit court did not err in overruling the plaintiff's demurrer to the answer. The motion to dismiss is denied, and the order appealed from is affirmed.