**CAIN, County Attorney, v. GARVEY et al.**
**(No. 156.)**

(Court of Civil Appeals of Texas. Beaumont. June 22, 1916.)

1. INTOXICATING LIQUORS ☞34(5)—LOCAL OPTION—BALLOTS.

Rev. St. 1911, art. 5719, prescribing the form of local option election ballots, is mandatory.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 42; Dec. Dig. ☞34(5).]

2. INTOXICATING LIQUORS ☞25—LOCAL OPTION—ELECTION.

The local option law (Rev. St. 1911, art. 5715 et seq.) is penal, and, unless its provisions are strictly followed, an election thereunder is void.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 31; Dec. Dig. ☞25.]

3. STATUTES ☞218—CONSTRUCTION—CONTEMPORANEOUS CONSTRUCTION.

Where a statute is ambiguous, great weight will be given to its contemporaneous construction by other departments of the government.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 294, 295; Dec. Dig. ☞218.]

4. INTOXICATING LIQUORS ☞34(5)—LOCAL OPTION—FORM OF BALLOT.

Rev. St. 1911, art. 5719, requiring local option ballots to bear the words "Official Ballot," "For Prohibition," and "Against Prohibition," requires a three-line, not a five-line, ballot, especially where it also requires voters to draw "a line" through one of the last two phrases.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 42; Dec. Dig. ☞34(5).]

5. INTOXICATING LIQUORS ☞34(5)—LOCAL OPTION—BALLOTS—AUTHORITY TO FURNISH.

Under Rev. St. 1911, art. 5719, requiring the clerk of the county court to furnish local option ballots, held, that the duty cannot be delegated to another.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 42; Dec. Dig. ☞34(5).]

6. INTOXICATING LIQUORS ☞34(5)—LOCAL OPTION—"OFFICIAL BALLOTS."

Under Rev. St. 1911, art. 5719, requiring the clerk of the county court to furnish local option ballots, and prohibiting the use or counting of any except official ballots, the term "official ballots" refers to those furnished by the clerk.

[Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. § 42; Dec. Dig. ☞34(5).

For other definitions, see Words and Phrases, First and Second Series, Official Ballot.]

Appeal from District Court, Liberty County; L. B. Hightower, Judge.

Action by Ed Garvey and others against C. H. Cain, County Attorney. Judgment for the plaintiffs, and defendant appeals. Affirmed.

C. H. Cain, of Liberty, and Townes & Vinson, of Houston, for appellant. George G. Clough, of Galveston, and E. B. Pickett, Jr., of Liberty, for appellees.

CONLEY, C. J. This suit was instituted by appellees to contest the local option election held in commissioners' precinct No. 3, Liberty county, on the 29th day of December, 1915, in substance upon the grounds that the ballots used in two of the voting boxes were not official ballots furnished by the clerk of the county court of Liberty county, as provided by law, but were ballots furnished by some other persons in confederation with the active Prohibition party in said precinct, and that they were fraudulently and wrongfully inserted in the election boxes with the election supplies; that such ballots were trick or deceptive ballots, and were formed and devised to deceive and trick persons in voting the same; that as a result of the use of the said ballots the voting box of Dolen gave a majority of 13 in favor of prohibition, and the voting box at Hightower gave a majority of 26 in favor of prohibition; that large number of the voters of said precinct were illiterate working people and unused to the interpretation and construction of the English language; that they were deceived by said ballot, and that they were prevented by the presiding officers of the election, who were active Prohibitionists, from expressing their true wishes in said election, and that they were wrongfully advised and solicited by the officers of said election in the manner and way they should vote said ballot to express their voice as they desired; that by reason of the wrongful conduct on the part of the officers of said election and the furnishing of such ballots more than 50 voters were deprived of their votes, and that but for such illegal action of said officers the result of said election would have been materially different, and a different result would have been obtained, and that by reason of the confusion arising out of the premises a large number of the voters were deprived of the right to vote fairly and honestly, and that it is impossible to arrive at the true result of the election, and that the total number thus deprived of their legal vote through said deceptive ballot fully exceeded the number found in favor of prohibition. The contestant also challenged at the various voting boxes the votes of 17 voters as having voted for prohibition as being illegal voters for various grounds named in the petition. The contestants likewise challenged the election because of lack of uniformity and mutuality in the form of the ballot.

The contestee answered, denying generally and specially the allegations in the petition, and specially answered in substance affirming the legality of the election, and specially denying the charges made by the contestants.

The trial of this cause consumed five days, and the record is voluminous. The trial court found the election void, and entered judgment accordingly, from which the appellant has perfected an appeal in due season to this court. Upon request of the contestee the trial court filed the following findings of fact and conclusions of law:

"Findings of Fact.

"(1) That an election was held December 29, 1915, in and for commissioners' precinct No.

3, Liberty county, to determine whether the sale of intoxicating liquor should be prohibited, and that in due season the result was declared by the commissioners' court to be For Prohibition by a majority of 49 votes.

"(2) That contestants filed their contest of said election, and served a true copy of the grounds of contest on the contestee within 30 days after the date of the declaration of result.

"(3) That contestants are duly qualified voters in and residents of commissioners' precinct No. 3 of Liberty county, and were on the 29th day of December, 1915, and at the filing of the contest, and in all things qualified to bring said contest.

"(4) That there are four voting boxes in said precinct, to wit, Cleveland, Tarkington, Hightower, and Dolen.

"(5) That there was first ordered an election to be held November 6, 1915, but the same enjoined because of illegal requirements in said order mentioned, and the same was not held.

"(6) That on or about October 26, 1915, the county judge of Liberty county ordered from Clark & Courts, of Galveston, four sets of election supplies for such election, and in said order expressly requested Clark & Courts not to send any ballots, stating that he then had a sufficient number on hand.

"(7) That Clark & Courts filled said order, but that such supplies come in sets and include 2 packages of 200 ballots each, in each set, and that Clark & Courts did send to the county judge the ballots included in the supplies, and a total of 1,600 ballots reading as follows:

Official Ballot<br>
For Prohibition<br>
Against Prohibition

—and that said supplies and ballots were received about November 15, 1915.

"(8) That on the date November 5, 1915, there was on hand in the office of the county judge 26 packages of 200 each of the same ballots, 501 of the same form, but different size and type, and about 400 of the same form, but of different type and size, together with a lot of sundry other official ballots used and to be used in road, special school, and irrigation district elections.

"(9) That on and about the 30th day of December, 1915, there was printed at Conroe, in Montgomery county, at the solicitation of the Prohibition campaign committee, and with their campaign literature, a blank form purporting to be an official ballot, of the following form:

Official Ballot<br>
For<br>
Prohibition<br>
Against<br>
Prohibition

"That said alleged ballot was upon a form made up without the knowledge, consent, or approval of the county clerk, county judge, or clerk of the county court, and that the county clerk had no knowledge of the transaction.

"(10) That the five-line ticket referred to in finding No. 9 was a private ballot or ticket designed and intended to be used by the prohibition committee, that the same was delivered by the printer to the Prohibition party, and by the Prohibition party delivered to C. N. Smith, who was county judge, and an active member of said Prohibition party, and that the same was designed, printed, and furnished for the purpose of having the same fraudulently and surreptitiously inserted in the ballot boxes with the regular election supplies to deceive ignorant voters of either voting a mutilated ballot or voting contrary to their choice.

"(11) That after said fictitious ballots had been printed said C. N. Smith, as county judge, without any authority whatever from the county clerk, sought to ratify the printing of said fictitious ballots by the campaign committee of the Prohibition party by delivering an order therefor to the Prohibitionists under date of December 21, 1915, and after this contest had been commenced, and on, to wit, February 4, 1915, the printers presented a bill to the said C. N. Smith, county judge, for $3 for printing said tickets, and the same was presented to the commissioners' court and ordered paid after this trial had commenced.

"(12) That in the voting boxes of Dolen and Hightower the alleged five-line ballot so privately printed and furnished by the Prohibitionists was used exclusively by the voters in voting, and that in the voting boxes of Tarkington and Cleveland the three-line ballot furnished by the clerk of the county court of Liberty county was used exclusively.

"(13) That the five-line ballot so privately printed and furnished at the instance of and by the Prohibition party was surreptitiously inserted in the election boxes so as to make it appear that the same was an official ballot, without the knowledge, consent, or approval of the clerk of the county court of Liberty county, Tex.

"(14) That the intent to use the five-line ballot so used in voting in the boxes of Dolen and Hightower was unknown to the county clerk, and the printing thereof and the form of the same concealed from him, that he was not consulted about the form of the ballot, the arrangement of the words thereon, and was not asked to and did not furnish the form or request any one else to do so, or to have any such ballots printed, and that had he been so consulted or had he been requested to have the ballots printed, or, had he requested some one else to do so, he would have furnished the form, and had the ballots printed in the following form, to wit:

Official Ballot<br>
For Prohibition<br>
Against Prohibition

"(15) That the official ballots which were furnished by clerk of the county court to be used in this election were brought to him with and as a part of the election supplies by the county judge, and that the ballots so brought to him with such election supplies, exhibited to him, and inserted in the boxes by him, and in his presence, and with his consent, were the three-line ballots which were used in holding the election in Cleveland and in Tarkington, and which were not used, but returned as unused ballots in the voting boxes of Dolen and Hightower, and that no other ballots except such three-line ballots were put in said boxes either by himself or by any other person in his presence or with his knowledge and consent.

"(16) That the returns of said election show the following result:

| | | | | | |
|---|---|---|---|---|---|
| Cleveland........For Prohib. | | 90 | Against Prohib. | | 125 |
| Tarkington...... " | " | 66 | " | " | 21 |
| Dolen............ " | " | 26 | " | " | 13 |
| Hightower....... " | " | 49 | " | " | 23 |
| Totals...................... | | 231 | | | 182 |

—and that the result as shown by opening the boxes and counting the ballots in open court in the Dolen and Hightower boxes is as follows: Dolen, 13 ballots of which the fourth and fifth lines were struck, 7 ballots of which the second and third lines were struck, and 19 ballots which could not be counted, because so defectively marked that the same could not be counted. Hightower, 39 ballots of which the fourth and fifth lines were struck, 21 ballots, of which the second and third lines were struck, and 12 ballots which could not be counted because defectively marked.

"(17) That in the Dolen and Hightower boxes there was great confusion arising out of the form of ballot and the manner in which the proposition to be voted on was printed thereon, that the judges of election were not sufficiently

advised how to properly mark said ballots, and that in the Dolen box Mr. Shaw, a judge, and Mr. Langston, a clerk, did not know how to vote and how to mark the tickets, and each of them voted For Prohibition when they intended to vote Against Prohibition, and that Mr. Shaw was appointed to assist the voters in marking said ballot.

"(18) That in the voting boxes of Dolen and Hightower, where the private 5-line ballot was exclusively used, a large number of qualified voters, 23 in number, voted a ballot either reading 'For Prohibition' or mutilated, but all of which ballots were received by the election judges and counted as votes 'For Prohibition,' when in truth and in fact they intended to vote against prohibition, and would have voted against prohibition had they been given the official ballot to scratch, as furnished by the clerk of the county court.

"(19) That in all elections heretofore held in Liberty county (save and except that one set aside by the court about the year 1910 known as the 'for and against 'local option' ballot) the ballots used were the conventional three-line official ballots.

"(20) That on the 28th day of December, the day before the election, L. A. Isaacks, in conjunction with other active Prohibitionists, had privately printed for use in the election in the boxes of Dolen and Hightower and Tarkington approximately 500 of the five-line ballots for the purpose of having the same used, if possible or necessary, in the said Hightower, Dolen, and Tarkington precincts, for the purpose of deceiving and tricking negroes and ignorant persons either to mutilate their ballot or into voting for prohibition instead of against prohibition as might be their wish, and that said ballots were printed and intended to be used in such election without the knowledge, consent, or approval of the clerk of the county court of Liberty county, who was not consulted with reference thereto.

"(21) That the three-line ballot as used in Cleveland and Tarkington and the five-line ballot as used in Dolen and Hightower are not uniform either in quality of paper, size of ballot, size of type, style, and form.

"(22) That J. J. Whatley, who voted by scratching the fourth and fifth lines of the ballot used at Hightower, and whose vote was counted for prohibition, was 59 years of age on January 1, 1914, and that at said date he resided in Liberty county, Tex., and that he was not exempt from paying a poll tax to Liberty county and the state of Texas on said date, and that he voted in said election on the honestly erroneous impression that, if he became 60 years of age during the year, he would be exempt from paying poll tax.

"(23) That D. W. Jackson, Jr., who voted at Tarkington for prohibition, had not been a resident of commissioners' precinct No. 3 for six months prior to the date of election, but that he moved from another commissioner's precinct into commissioners' precinct No. 3 only about two weeks before the date of said election.

"(24) That Solly Gillen, who voted in Tarkington precinct for prohibition, had no poll tax receipt, and had not paid his poll tax for the year 1914, that on January 1, 1914, he was a resident of Liberty county, Tex., in no way exempt, and liable for a poll tax to Liberty county and the state of Texas, and that he voted in said election. He voted upon a 1915 poll tax receipt under the impression that the possession of the 1915 poll tax receipt authorized him to vote.

"(25) L. A. Buckaluw, who voted in Cleveland precinct for prohibition, voted upon a poll tax receipt for 1914 issued by San Jacinto county, but that Buckaluw was an adult January 1, 1914, and actually resided at said date in Walker county, Tex., and was liable to Walker county for a poll tax.

"(26) That O. J. Wullschlager, who voted in Dolen by striking the fourth and fifth lines of the ballot, was a resident of Liberty county January 1, 1914, and liable for a poll tax therein, and that he did not pay said poll tax, being under the impression because one of his limbs was withered that he was not liable therefor, that said voter is capable of and is earning a living as a telegraph operator, and is not totally disabled, and that he has not lost either of his hands or his feet or any part thereof by severance from the body.

"Conclusions of Law.

"(1) That the act of 1909 providing for the form of official ballot, being article 5719 of Vernon's Sayles' Texas Civil Statutes, is mandatory, and must be strictly followed to give validity to an election having for its purpose the prohibiting of the sale of intoxicating liquors within a given territory.

"(2) That the five-line form of ballot which was used and voted in the voting boxes of Dolen and Hightower is not authorized by the law, and that article 5719, providing for the form of the ballot, contemplates that such form shall be of three lines, and that upon the top line there shall be the words 'Official Ballot,' and that on the next line shall be the words 'For Prohibition,' and that on the third line or last line shall be the words 'Against Prohibition.'

"(3) That the term 'Official Ballot,' as used in article 5719, means the ballot officially furnished by the clerk of the county court, and of the form prescribed in said article.

"(4) That the fact of printing the words 'Official Ballot' at the top of the privately furnished five-line ballot used in Dolen and Hightower boxes and handed out to the voters by the officers of election does not constitute it an official ballot within the terms of the law.

"(5) That J. J. Whatley was an illegal voter of Hightower voting precinct.

"(6) That D. W. Jackson and Solly Gillen were illegal voters of Tarkington precinct.

"(7) That L. A. Buckaluw was an illegal voter in the Cleveland precinct.

"(8) That O. J. Wullschlager was an illegal voter in the Dolen precinct.

"(9) That the local option election held December 29, 1915, in and for commissioners' precinct No. 3 of Liberty county is void, and should be set aside: (a) Because of the use of illegal and unofficial ballots in two of the four voting boxes of said precinct; (b) because of lack of uniformity in the printing, style, and form of the ballots used in said election; (c) because of the use of ballots in two of the voting boxes privately furnished by the Prohibitionists and surreptitiously inserted in the election supplies and designed and furnished with the intent to and which did deceive and confuse all parties using it, voters and officials alike; (d) because of the failure of the election judges to use the three-line official ballot in the Dolen and Hightower boxes, though furnished and on hand in and with the election supplies for such use; (e) because it is impossible to ascertain the true and probable result of this election, due to the use of a defectively marked five-line ballot illegally used in the Dolen and Hightower boxes to the exclusion of the official and statutory three-line ballot used in Cleveland and Tarkington, and a sufficient supply of which were furnished to the election officers in Dolen and Hightower, and which they did not use."

The first 122 pages of appellant's brief, being assignments of error 1 to 11, inclusive, constitute an attack upon the court's fifth, ninth, tenth, eleventh, twelfth, fourteenth, seventeenth, eighteenth, nineteenth, and twentieth findings of fact. In these assignments it is contended that such findings are either not supported by the evidence or are contrary

to the evidence. It would serve no good purpose to set out in detail the evidence, which we have carefully examined, bearing upon these various findings of fact, and which is relied upon by the contending parties to sustain or refute said assignments, but suffice it to say that, although the evidence upon the issues in controversy is conflicting, still there is ample support to be found in the testimony to sustain all of the court's findings, except perhaps the fifth which is upon an immaterial matter. Under such circumstances we would not be authorized nor justified in disturbing the trial court's action. The law has wisely placed in the trial court the power to determine conflicting issues of fact, and it, having had an opportunity to see and observe the witnesses as they testified, and to study their demeanor and conduct while on the stand, is in a much better position to arrive at a true and correct conclusion affecting the contention of the parties than we would be, who must, of necessity, rely only upon the motionless and impersonal words of the witnesses to guide us. A cold and lifeless record can never give a true and perfect reproduction of the effect of evidence, nor convey the unsaid and secret purposes and motives which are reflected in the expression, conduct, demeanor, and general appearance of the witnesses. These assignments of error, and the others leveled at the conclusions of law based thereon, are overruled.

There seem to be three other fundamental questions presented by appellant's brief in the remaining assignments of error. We shall consider such questions in the following order and regardless of the numerical assignments as found in the brief, to wit:

First, whether or not the statutes of this state require the official ballot used in local option elections · to be written or printed in three-line form, to wit:

"Official Ballot
For Prohibition
Against Prohibition."

Second, a proper construction of the terms of article 5719 of the Revised Statutes requiring:

"That the clerk of such court shall furnish the presiding officer of each voting box within the proposed limits with a number of such ballots to be not less than twice the number of the qualified voters at such voting box."

Third, whether all of the ballots to be used in the different voting boxes in a local option election are required by law to be printed in the same number of lines and uniform in paper, style and printing.

Article 5719, Revised Statutes of Texas, reads as follows:

"*Form of Ballot, Etc.* At said election the vote shall be by official ballot, which shall have printed or written at the top thereof, in plain letters the words 'Official Ballot.' Said ballot shall have also written or printed thereon the words, 'For Prohibition' and the words 'Against Prohibition;' and the clerk of the county court shall furnish the presiding officer of each voting box within the proposed limits with a number of such ballots, to be not less than twice the number of qualified voters at such voting boxes; and the presiding officer of each such voting box shall write his name on the back of each ballot before delivering the same to the voter, and the person offering to vote at such election shall, at the time he offers to vote, be furnished by such presiding officer with one such ballot; and no voter shall be permitted to depart with such ballot, and shall not be assisted in voting by any person except such presiding officer or by some officer assisting in the holding of such election, under the direction of such presiding officer when requested to do so by such voter.

"Those who favor the prohibition of the sale of intoxicating liquors within the proposed limits, shall erase the words, 'Against Prohibition' by making a pencil mark through same. No ballot shall be received or counted by the officers of such election that is not an official ballot, and that has not the name of the presiding officer of such election written thereon in the handwriting of such presiding officer, as required by this article."

The courts have had occasion to consider the provisions of this statute in recent decisions. Gomez v. Timon, 128 S. W. 656; Griffin v. Tucker, 51 Tex. Civ. App. 522, 119 S. W. 338; Griffin v. Tucker, 102 Tex. 420, 118 S. W. 635.

In the Griffin Case, 119 S. W. supra, the ballots, instead of containing the words required by statute, to wit, "For Prohibition" and "Against Prohibition," had printed on them "For Local Option" and "Against Local Option." Referring to this failure to comply with the express provisions of the statute, the court said:

"The statute prescribing the form of the ballot is mandatory and must be strictly followed. It may be a reasonable inference that those who voted for local option intended to vote for prohibition and those who voted against local option intended to vote against prohibition, but the literal meaning of the words is entirely different, and, under the mandatory provisions of the statute before quoted, the intention of the voter must be expressed by writing or printing upon his ballot the words prescribed in the statute, and cannot be left to inference or be shown by parol evidence. The local option law is a penal law, and it has been uniformly held by our Court of Criminal Appeals that, unless it is strictly followed in all of the proceedings necessary to put it into operation, the order declaring it to be in force in the particular territory is void. In the case of Ex parte Kremer, 19 Tex. App. 123, that court, in passing upon the validity of a local option election, says: 'If the election was not conducted in accordance with the requirement of the law, it is void, and not merely voidable, and all proceedings had under · and by virtue of such void election are absolutely void, and may be questioned not only directly but collaterally.' Boone v. State, 10 Tex. App. 418, 38 Am. Rep. 641; Prather v. State, 12 Tex. App. 401; Ex parte Conley (Tex. Cr. App.) 75 S. W. 301. While the ballots reading 'For Local Option' and 'Against Local Option' cannot be counted for or against prohibition, they were votes polled at the election, and neither the ballots reading 'For Prohibition' or 'Against Prohibition' are a majority of all the votes polled, and therefore the result of the election is impossible of ascertainment from the face of the returns. The use of these illegal ballots which were furnished the voters by the officers of the election, being such an irregularity as renders the result of the election impossible to be arrived at, under the provisions of article 3397, before quoted, the election must be de-

clared void, and the proper officer ordered to order a new election."

This cause was certified to the Supreme Court (Griffin v. Tucker, 102 Tex. 420, 118 S. W. 635), and that court affirmed the holding of the Court of Civil Appeals on the question involved.

In the Gomez Case, supra, the ballots were all on separate pieces of paper. On one was printed "For Prohibition" and on the other "Against Prohibition", and neither contained the words "Official Ballot." In considering this matter the court said:

"Whether or not the court erred in sustaining the demurrer and special exceptions to the petition of contestant depends on whether the act above quoted prescribing the form of ballots to be used in local option elections is mandatory. If it is, then, according to the plain allegations of the petition, the ballots used in the election were not official ballots as prescribed by the act, and should not have been received or counted. In State v. Connor, 86 Tex. 133, 23 S. W. 1103, Judge Brown for the Supreme Court, construing articles 1694 and 1697, Rev. St. 1879, brought forward in the revision of 1895 as articles 1738 and 1741, which provide that one of the judges of elections shall write upon each ballot the voter's number corresponding with the number on the clerk's poll list, and that ballots not so numbered should not be counted, says: 'It is unnecessary to discuss the difference between directory and mandatory statutes. The law commands that the number shall be written on the ballot, and forbids that not numbered to be counted. Taking the two articles together, and especially in connection with section 4, art. 6, of the Constitution, there can be no doubt that they are mandatory. "A clause is directory when the provision contains mere matter of direction and no more; but not so when followed by words of positive prohibition." Bladen v. Philadelphia, 60 Pa. 466; Pearce v. Morris, 2 Ad. & El. 96. Prohibitory words can rarely if ever be directory. There is but one way to obey the command "thou shalt not," which is to abstain altogether from doing the act forbidden.'

"Tested by the above rule, we think that the requirements of the act under discussion as to the character of the ballots to be used are mandatory; and, treating the allegations of the petition to be true, as we must as against the demurrer and exceptions, it stated a good cause of action, and that the action of the court in sustaining the demurrer and special exceptions was error, for which the judgment of the court below must be reversed and the cause remanded."

[1, 2] It is to be seen that these authorities determine: First, that Revised Statute, § 5719, prescribed the form of the ballot; second, that the provisions of the said statute prescribing said form are mandatory; and, third, that the local option law is penal in its nature, and the provisions must be strictly followed, or the election thereunder is void. There are other rules of instruction bearing upon this issue which it may be well here to state.

A statute of this nature, in so far as it affects the sovereign right of suffrage, should receive such a construction as would tend to assist, promote, and protect the honest and open expression of the voter's mind, and not one which by any sort of circumstances would create a condition or open up an opportunity for the unscrupulous and evil minded by trick and chicanery to interfere with the expression of the voter's will. Hanscom v. State, 10 Tex. Civ. App. 638, 31 S. W. 549.

[3] Where there may exist a doubt as to the meaning of a statute, the courts will adopt and follow the contemporaneous and practical construction put upon such statute by other departments of the government, and by those charged with the execution thereof and with the performance of duties thereunder. Acquiescence by the people for many years in such construction and their formed habit of action and custom arising by virtue of such construction are entitled to great weight with the courts and such construction ought to be undisturbed except for manifest error. 8 Cyc. 736 et seq.

[4] The above statute expressly deals with the form of the ballot. The statute says so in express terms, and also by inference. The courts have already declared that the statute prescribes the form of the ballot, and that such statute is mandatory, and that its provisions as affecting the form of the ballot should be strictly construed. It is to be noticed that the statute: First, provides that the election shall be by official ballot, and that the ballot shall have written or printed at the top the words (as expressly stated in one quotation and conjunctively) "Official Ballot"; second, that it also shall have written or printed thereon (as expressly provided, in one quotation and conjunctively) "For Prohibition"; third, that it shall also have written or printed thereon (as expressly provided, in one quotation and conjunctively) "Against Prohibition." In the natural order of the English language, this will make a ballot of three lines, and there can be no doubt that this was the intent and purpose of the Legislature. This intent is further manifested by the other provisions of the act which prescribes the manner of voting the ballot. Those who favor the prohibition of the sale of intoxicating liquors within the proposed limits shall erase the words "Against Prohibition" by making a pencil mark through the same, and those who oppose it shall erase the words "For Prohibition" by making a pencil mark through the same," thus:

Official Ballot　　　　　　Official Ballot
For Prohibition　　　　~~For Prohibition~~
~~Against Prohibition~~　　Against Prohibition

This form is a literal compliance with the statute, and can be voted by making a pencil mark through the same. The form of the ballot used in the Hightower and Dolen boxes was as follows:

Official Ballot
For
Prohibition
Against
Prohibition

Under this form of ballot, it would be impossible to comply with the terms of the statute expressly providing that a line should be run through the words "For Prohibition" or

"Against Prohibition," in accordance with the way the voter wanted to express himself on the issue. It would take two lines to run through the words so as to erase them.

The court ought to be guided by the language of the statute and to give expression to the free and natural meaning which the words convey, and not to give the language such an interpretation as would lead to an unnatural and absurd conclusion, as we necessarily would do if we should allow any sort of ingenious combination to be molded out of the words contained in the statute, as contended for by the appellant.

We cannot follow the assertion that the statute only requires certain words to appear upon the ballot, and that it gives no heed to the form of the words or to the construction of such words into phrases; but, on the other hand, we believe that the act contemplates a three-line ballot, such as above set out, and which is known and referred to in the evidence as the "standard form," and which has been almost universally prescribed in local option elections, and in universal and practical use by the people since the original enactment of the statute. It is certainly the simplest form and one most likely to give true expression to the voice of the voter.

[5, 6] Article 5719 of the statutes contains a provision which reads as follows:

"The clerk of such court [the county court] shall furnish the presiding officer of each voting box within the proposed limits with a number of such ballots, to be not less than twice the number of qualified voters at such voting box."

The statute also prohibits the use of any except official ballots, and declares that none except such official ballots shall be received or counted.

There is nothing uncertain or ambiguous about the language used in these provisions. It was the purpose of the law to do away with the furnishing of all private ballots as had theretofore been the practice. For many reasons the privately furnished ballot was unsatisfactory and was open to much fraud and manipulation. This law names a responsible officer as the person to furnish all the official ballots. It declares what should be upon the official ballot, declares what words should be upon such ballot, and fixes the form of such words by quoting them in parenthetical pairs. It fixed the scource from which the ballot should come, and prohibited the use of any except such official ballots; that is to say, such ballots as were furnished to the election officers by the county clerk. Clearly, then, the clerk having the duty of furnishing such ballots, it was incumbent upon him to make up and prepare the form thereof, in compliance with the statute. This is a personal trust reposed in him by the law. He cannot delegate this duty to the county judge, nor to any other officer of the government. The trial court did not err in holding that the term "Official Ballot," as used in article 5719, means the ballot officially furnished by the county clerk.

Having already reached the conclusion from our investigation of the questions considered that this cause must be affirmed, we do not deem it necessary at this time to express an opinion on the third question above referred to; that is, as to the requirements of uniformity of the ballot in all of the boxes in precinct No. 3, the number of lines, style, printing, quality of paper, etc.

The court did not err in holding the election void and this cause is therefore affirmed.