POWELL v. CHARCO INDEPENDENT
SCHOOL DIST. et al. (No. 6035.)

(Court of Civil Appeals of Texas. San Antonio.
May 15, 1918. Rehearing Denied June 12,
1918.)

1. APPEAL AND ERROR ⊙⇒759—BRIEFS—FORM.
The rule in regard to briefs on appeal, requiring that each ground of error relied on shall be separately presented under an assignment of error, is not complied with where the assignments are treated as being part of the statement of facts, and not as the basis of the propositions of law, and are mixed up with the statement following a proposition which in turn follows an assignment.

2. STATUTES ⊙⇒8½(1)—SPECIAL LAWS—NOTICE.
Irrespective of Const. art. 3, § 56, providing that the Legislature shall not, "except as otherwise provided in this Constitution," pass local or special laws regulating the affairs of school districts, Const. art. 7, § 3, authorizing formation of school districts by general or special law, without the local notice required in other cases of special legislation, and authorizing the Legislature to pass laws for the assessment and collection of taxes in such districts, authorized the Legislature to pass, without notice, the special act creating the Charco independent school district (Special Acts 34th Leg. c. 51), which provided for election to determine necessity of borrowing money and the rate of taxation.

3. STATUTES ⊙⇒96(5)—SCHOOL DISTRICTS.
By Const. art. 7, § 3, as amended in 1909, the Legislature is authorized by general or special law not only to create school districts, but to provide for the assessment and collection of taxes therein and for the management and control of their schools, and to authorize the levy and collection of additional ad valorem taxes, not only in such districts as then existed, but those thereafter formed.

4. STATUTES ⊙⇒96(1)—SCHOOL DISTRICTS.
Under Const. art. 7, § 3, as to school districts, the Legislature can exercise the same authority over a school district through a special law, without notice, as through a general law.

5. STATUTES ⊙⇒76(1) — APPLICABILITY OF
GENERAL LAW.
The special act creating the Charco independent school district (Special Acts 34th Leg. c. 51), is not invalid as prescribing a notice of election for bonds different from that prescribed in Rev. St. arts. 2857, 2859.

6. SCHOOLS AND SCHOOL DISTRICTS ⊙⇒97(3)—
BOND ISSUES—AMOUNT.
That an independent school district, which has voted a bond issue, does not have a property valuation sufficient to sustain such issue, does not make the election invalid, but the proportion of the voted bonds that can be protected by a legal tax on the present valuation of property within the school district may be legally issued.

Appeal from District Court, Goliad County; John M. Green, Judge.

Suit by N. R. Powell against the Charco Independent School District and others. From a decree for defendants, plaintiff appeals. Affirmed.

Dougherty & Dougherty and G. C. Robinson, all of Beeville, and G. E. Pope, of Goliad, for appellant. Sam C. Lackey and H. W. Wallace; both of Cuero, for appellees.

FLY, C. J. Appellant instituted this suit against the Charco independent school district and J. C. Calhoun, Norman Calhoun, G. T. Powell, T. J. Reagan, and R. E. Roberts, trustees of said district, seeking to restrain appellees from issuing certain bonds of said district which had been authorized by an election of the voters of the district. The court, after a full hearing, denied the injunction.

It was agreed between the parties that the school district was created by a special act of the Thirty-Fourth Legislature (Special Laws 1915, p. 161); that on November 27, 1916, an election for the issuance of bonds was ordered by the trustees of the school district, and an election held and the bonds voted. Bonds in the amount of $8,000 were executed and made ready to issue by the trustees. That election was declared invalid by the trustees, and another election was held on May 5, 1917, resulting in the approval of an issuance of bonds in the sum of $10,000. The last order for an election was issued on April 21, 1916, 14 days before the election was held, and 10 days' notice of the election was given. The order declaring the result of the election was made on May 7, 1916, and on the same date an order was made for the issuance of the bonds, and the law complied with as to provisions for interest and sinking fund. The total property values in the district were $371,986. It seems that a tax of 25 cents on the $100 which is provided for by law and the order of the trustees would not be sufficient to meet the interest and provide a sinking fund for the whole $10,000 voted, but it was also shown only so many of the bonds would be issued and sold for which the taxes would provide interest and a sinking fund.

[1] After a statement of the nature of the case and result of the trial appellant has placed in his brief his first proposition which he says is "under his first assignment of error." However, the first assignment is not copied until after a statement, covering about 11 printed pages, is made, when it is copied just above the authorities cited. The first propositions, said to be under the second and third assignments of error, are followed by the third and second assignments of error. No statement is found under either of the assignments. The only other assignments of error, the seventh and eighth, are placed after the propositions, the seventh being placed at the beginning of the statement following the proposition, and the eighth at the end of the statement. In fact, all of the assignments of error are treated as being a part of the statement of the facts, and not as the basis of the propositions of law. This is not in compliance with the rules which require that each ground of error relied on in a brief shall be separately presented under an assignment of error. It was never contemplated that assignments

---

·of error should be mixed up with a statement, which should follow a proposition which should follow an assignment. The brief is not only in total disregard of the rules, but has entailed much labor upon this court to discover assignments buried in statements. No objection, however, has been urg·ed to the brief by appellees, and, as the assignments have been correctly copied into the brief, we have considered those not violating other rules, but this action will not be considered as a precedent to guide in the briefing of cases. The rules are simple, and when followed assist the court in arriving at a con·clusion as to the points sought to be raised.

The judgment is attacked, through the first assignment of error, because the notice of election was not posted for 20 days before the date of the election. In the special law creating the Charco independent school district it is provided that, when it becomes necessary to borrow money to purchase grounds and erect, furnish, and equip school buildings, the amount shall be ascertained as well as the rate of tax to be levied, and the board of trustees "shall then immediately cause an election to be held on some secular day, not a legal holiday, within twenty days after the date of ordering such election, of which ten days prior notice shall be given by the board of trustees by written notice duly posted at three public places within said district." That law was strictly complied with, and, if not unconstitutional, was sufficient to sustain the election.

[2] It is the contention, however, through the third assignment of error, that the law is unconstitutional, because antagonistic to section 56 of article 3 and section 3 of article 7 of the state Constitution. In section 56 of article 3 it is provided that the Legislature shall not, except as otherwise provided in the Constitution, pass local or special laws, as to a number of things, among the number being "regulating the affairs of counties, cities, towns, wards or school districts." Section 3 of article 7 of the Constitution is an amendment adopted by the people in 1909, the parts added to the original section 3 being:

That such "school districts, whether created by general or special law, may embrace parts of two or more counties. And the Legislature shall be. authorized to pass laws for the assessment and collection of taxes in all said districts, and for the management and control of the public school or schools of such districts, whether such districts are composed of territory wholly within a county or in parts of two or more counties."

These quotations form the parts added to the section in question in 1909, with the exception of the words "heretofore formed or hereafter to be formed," which were added as descriptive of the districts in which an additional ad valorem tax may be authorized by the Legislature. Appellant quotes the language deemed by him applicable to school districts, but omits the gist of the amendment which empowers the Legislature to pass laws, either general law or special law, without the notice required in other cases of special legislation, and in order that there might be no ground for contention that the authority was given only as to districts lying partly in one county and partly in another it describes the districts as those "composed of districts wholly within a county" and those "in parts of two or more counties." In spite, however, of that clear and explicit declaration, it is the contention of appellant that the amendment was made "looking alone to county line districts." Even if the definite description of the districts affected by the amendment had not been given, it would have been clear from the other language used that all school districts were in view, for "such" and "said school districts," of course, refer back to the districts that the Legislature is authorized to form, whether in one county alone or "parts of two or more counties."

[3] It is clear that by the amendment the Legislature is authorized by general or special law to create school districts, to provide for the assessment and collection of taxes therein and for the management and control of their schools, and to authorize the levy and collection of additional ad valorem taxes, not only in such districts as then existed, but those thereafter formed. These extra powers conferred upon the Legislature do not in any wise conflict with section 56, art. 3, because the inhibition in that section is made subject to any exception "otherwise provided." It made provision for any amendment to the Constitution as to regulating the affairs of counties, cities, towns, wards, or school districts, giving the power to regulate such affairs. Undoubtedly the amendment "otherwise provided" for such regulation by "local or special law." The broad powers given by the amendment to the Legislature authorized the passage of the special law creating the Charco independent school district, and under the power granted "to pass laws for the assessment and collection of taxes in all said districts and for the management and control of the public school or schools of such district" the Legislature could by "a special law, without the local notice required in other cases of special legislation," authorize the assessment and collection of taxes and manage and control the public schools in the district as fully as could be done through a general law. No one can reasonably contend that the powers granted the Charco school district could not have been given through a general law, and the amendment adopted in 1909 extends the authority to the Legislature to give such districts such powers through special laws without the necessity of the usual notice required in other cases of special legislation. It may be that the desire to authorize the formation of school districts composed of parts of two or more counties was what primarily prompted the submission of the amendment to the people, but the

language of the amendment went further and granted to the Legislature authority theretofore denied to it by the Constitution.

[4] Section 10 of article 11 of the Constitution empowers the Legislature to constitute any city or town a separate and independent school district and authorizes certain school districts to levy and collect taxes under certain conditions, and, as said in State v. Brownson, 94 Tex. 436, 61 S. W. 114, the power granted to the Legislature would not have been necessary except for the provisions of section 56 of article 3. In 1883 an amendment to section 3 of article 7 was adopted which gave the power to create school districts by special laws without notice, and then in 1909 the same authority over school districts that could be exercised by general law was given by and through special laws. Having the power to create them, the Legislature perhaps had the authority under the amendment of 1883 to manage and control the schools of districts created by it, but, if such authority did not exist, it was clearly granted by the voters of Texas in 1909, and the Legislature can exercise the same authority over a school district through a special law, without notice, as through a general law. Snyder v. Baird, 109 S. W. 472; Cummins v. Gaston, 109 S. W. 476; Parks v. West, 102 Tex. 11, 111 S. W. 726; Gillespie v. Lightfoot, 103 Tex. 359, 127 S. W. 799; Glass v. Pool, 106 Tex. 266, 166 S. W. 375. As said by the Supreme Court in the case next to last cited:

"The amendment of the Constitution is an exertion of the sovereign power of the people of the state to give their expressed will the force of a law supreme over every person and every thing in the state so long as it does not conflict with the Constitution of the United States. The rule so established bears down and supplants all other laws and rules that are inconsistent with it. In determining rights controlled by it we therefore have only to ascertain what it means and give it full effect, so long as it encounters no opposition in the higher law of the federal Constitution."

The amendment to the Constitution adopted in 1909 gave certain authority to the Legislature it had not possessed before, and when such authority was given it gave the power to enact any and all laws that it could enact had there been no such provision in the Constitution as that embraced in article 3, § 56. Dallas v. Electric Co., 83 Tex. 243, 18 S. W. 552; Altgelt v. Gutzeit, 187 S. W. 220.

In the case of Eagle Lake Independent School District v. Hoyo, 199 S. W. 352, the identical points raised as to the constitutionality of special or local laws in regard to which notice has not been given are discussed, and the conclusion reached:

"That the Constitution, by this very simple and plain language, confers on the Legislature the power to make any provisions for such school districts by special law, without the local notice, that it might make with it, or by general law."

All the Texas authorities on the subject are fully reviewed and distinguished in that case.

This court, in an exhaustive opinion, delivered through Associate Justice Moursund, fully treated the subject of special laws in connection with independent school districts, and arrived at the conclusion:

"That if the authority to legislate by special act upon a certain subject is given by a provision of the Constitution other than section 56, art. 3, such authority carries with it the right to enact all provisions which could legitimately be embraced in the bill if such section 56 was not a part of the Constitution. The Legislature would have the same right to frame the provisions of the special act as it would if it was framing a general law to accomplish the same purpose. Its inherent power would not be affected by the fact that it availed itself after privilege to use a special act pursuant to authority conferred in the Constitution. The power to create a district carries with it the power to deal with school property in the territory, and to regulate the school affairs of the entire new district, and make all provisions germane to the purpose of creating the new district, and all of this may be done by a special act without notice." Houston v. Gonzales Independent School Dist., 202 S. W. 963, not yet officially published.

The conclusion reached in that case is irresistible and is fully sustained by all the authorities. The Charco independent district is legally and constitutionally established, and the bond question was duly presented to the people of the district in compliance with a constitutional law, and the issue of the bonds legally authorized.

[5] Having been invested by the Constitution with the power to control and manage public schools by special or local legislation, and to authorize the assessment and levy of taxes through special or local legislation, the Legislature had the right as it would by general legislation to provide the manner in which notice should be given as to bond elections, and if such provision as to notice is in conflict with a general law, the latter would give way in the district created by the local law. Dallas County v. Plowman, 99 Tex. 509, 91 S. W. 221. There is nothing sacred about the provisions as to notice in articles 2857 and 2859, Rev. Stats., and, having the power to create a district by a local law, the Legislature had the authority to provide for a different notice of election for bonds than that prescribed in the articles cited.

The cases of Hall v. Bell County, 138 S. W. 178, and Bell County v. Hall, 105 Tex. 558, 153 S. W. 121, cited by appellant, were in regard to a law passed before the constitutional amendment of 1909 was adopted, and further were in connection with a law about a county auditor, and had nothing to do with school districts, with which the amendment is alone concerned. The case of Cain v. Garvey, 187 S. W. 1111, is a liquor local option case and is not applicable to this case. None of the numerous authorities cited by appellant are pertinent to the facts before this court.

[6] The second contention of appellant is that, as the property valuation of the school district shows that it is not sufficient to sustain an issue of $10,000 in bonds, the elec-

tion is invalid, and bonds in no amount can be issued. The excess of bonds voted on doubtless occurred from a miscalculation of the interest and sinking fund required and the amount the property values would produce, or the property values were not correctly ascertained. At any rate, it is not claimed that a fraud was intended or attempted, and it is agreed that no attempt had been, or would be, made to issue any more of the bonds than would be covered and protected by a tax of 25 cents on the $100 of the taxable property in the district. No bonds had received the Attorney General's approval, and none been registered by the comptroller, and of course could not be put on the market until those things were done. No debt had been created against the district, and none would be created until the approved and registered bonds had been sold. There are 18 of the 20 $500 bonds authorized by the vote of the people to be issued that can be lawfully sold, being amply secured by the necessary interest and sinking fund arising from a legal tax on the property valuation.

Can that proportion of the voted bonds be legally issued that can be protected by a legal tax on the present valuation of property in the school district? We are of opinion that such issue can be legally made. The people were fully informed of the matters concerning the bond issue, and voted that a bond issue of $10,000 should be made, and it cannot be presumed that an issue of $9,000 in bonds would meet with their disapproval. The sanction of a bond issue for a larger amount would necessarily include the issue of a less amount of bonds. In other words, the people authorized the trustees to issue a certain number of bonds of a certain value each, and it would be unreasonable to suppose that such authority would not give authority and discretion to issue a less number if for any reason they deemed such less number should be issued. The trustees could not increase the amount voted, but would be authorized to lessen the amount if deemed expedient and proper. The maximum amount of the bond issue was voted by the people, and although that issue was excessive at the time, a less amount could be issued, and the others issued whenever the property values had sufficiently increased to justify it. City of Austin v. Valle, 71 S. W. 414, writ of error denied; Cohen v. City of Houston, 176 S. W. 809. In the Valle Case it was held that:

The "bonds will be valid, although the bonds would have been excessive if all of them had been issued at the time the election was held."

In the Cohen Case it was stated:

"The question presented by this state of fact, then, is whether the city can lawfully issue the bonds in annual installments running for a period of five years. We think the answer should be in the affirmative, provided that at the time of issuing each installment the city has available a margin of taxing power and property values sufficient to raise, by taxation, the sum of money necessary to pay the interest upon and to create a sinking fund of at least 2 per cent. for the redemption of such installment at maturity."

In the same case, following other authorities, it was held that the debt was not created until the bonds were sold as obligations against the city or district issuing them. Speaking on this subject, it was said in the Valle Case:

"We are of the opinion that, although the taxable values may not be sufficient at the time the election is held, yet if at the time the bonds actually become debts against the city the taxable values are sufficient to pay the interest and provide the sinking fund, the bonds will be valid."

In the case of Wells v. Sioux Falls, 16 S. D. 547, 94 N. W. 425, forcefully and properly it was held:

"The contention that the defendants are without power to issue these bonds to the amount of $50,000 because the proposition submitted to the voters provided for 'issuing bonds to the extent of $210,000' is untenable, especially as it appears that they intended to issue the remaining portion as they may be required by the contemplated municipal improvement. The mere statement of the contention is sufficient to show its fallacy. It would be contrary to the dictates of reason to hold that the city authorities are bound to sell more bonds than are needed for the intended purpose, or that they are required to dispose of all of them at one and the same time."

To the same effect are Dillon, Mun. Corp § 203, and Daviess County v. Dickinson, 117 U. S. 657, 6 Sup. Ct. 897, 29 L. Ed. 1026; City of Laredo v. Looney, 108 Tex. 119, 185 S. W. 556.

The judgment is affirmed.