J. W. PARKS ET AL. V. R. C. WEST ET AL.

No. 1851.  Decided June 17, 1908.

**1.—Constitutional Law.**

Where a power is expressly given by the Constitution and the means by which or the manner in which it is to be exercised is prescribed, such means or manner is exclusive of all others.  (P. 16.)

**2.—Same—School Districts.**

The power given to the Legislature by the Constitution (art. 7, sec. 3, Amendment of 1883) to provide by general or special law "for the formation of school districts within all or any of the counties of this State" with power for local taxation for school purposes, did not authorize the creation of an independent school district embracing territory lying partly within one county and partly within another.  (Pp. 16–18.)

**3.—Same—Case Distinguished.**

State v. Brownson, 94 Texas, 436, distinguished and limited.  (Pp. 15, 16.)

**4.—Corporate Existence—Collateral Attack Upon.**

The rule precluding collateral attack upon the existence of *de facto* corporations is limited to such as might legally exist and to cases where the law under which they might exist is a constitutional one.   (P. 18.)

**5.—School Bonds—Unlawful Issuance—Injunction.**

The attempt to issue bonds by the trustees of an alleged independent school district created by an unconstitutional law, and having no power to issue bonds or levy special taxes, may be enjoined by a property holder asking protection against the imposition of such burden.   (P. 19.)

**6.—Independent School District—Taxation.**

The rule in Snyder v. Baird Independent School District denying the constitutional right of such districts, not incorporated cities or towns, to levy taxes exceeding 20 cents on the 100 dollars for school purposes followed.   (P. 19.)

**7.—Constitution—Legislative Power—Independent School District.**

The words "within all or any of the counties of this State" describing the power granted to the Legislature to provide for the formation of independent school districts with special power of taxation (Const. art. 7, sec. 3, Amendment 1883) are used with reference to the power to provide for such districts by general or special law, the former •within all counties of the State, the latter within any county.   (P. 15.)

Error to the Court of Civil Appeals for the Fifth District in an appeal from Navarro County.

Parks and others brought suit against West and others to injoin the issuance by defendants of bonds for an independent school district, and appealed from a judgment in favor of defendants.   This was affirmed in part and in part reversed and rendered, whereupon the appellants obtained writ of error.

*R. S. Neblett, R. R. Owens* and *Simkins & Simkins,* for plaintiffs in error.—The trial court and the Court of Civil Appeals erred in holding that it is within the power of the Legislature, under the Constitution, to incorporate school districts for free school purposes only, composed of parts of two or more counties, and that if the incorporation was not valid by reason of the vote incorporating the same, it was made valid by section 151 of the School Laws of 1905.   Foster v. Hare, 62 S. W., 543; Judd v. State, 25 Texas Civ. App., 418; Lum v. Bowie, 18 S. W., 144; Balch v. Fry, 85 S. W., 329; Revised Statutes, art. 3938; Pinson v. Vescy, 23 Texas Civ. App., 91; State v. Browning, 28 N. J. Law, 556; Barrett v. Coleman, 12 Texas Civ. App., 663; Whitmire v. State, 47 S. W., 293; Pontotoc v. Johnson, 59 S. W., 53; Trustees v. Young, 49 S. W., 28; Trustees v. Fishback, 49 S. W., 29.

The Legislature is without constitutional authority to create, but is impliedly prohibited from creating or from authorizing the creation of incorporated districts lying within parts of two or more counties. Pontotoc v. Johnson, 59 S. W., 52; Sec. 1, art. 11, Constitution, 1876; Subsec. 1, art. 9, Constitution, 1876.

The trial court and the Court of Civil Appeals erred in holding that the Mertens Independent School District can lawfully levy a tax

for school purposes in excess of 20 cents on the $100 valuation of property in the district. Constitution, art. 11, sec. 10, art. 7, sec. 3.

The trial court and the Court of Civil Appeals erred in holding that the order of the county judge of Hill County directing an election for the incorporation of the Mertens Independent School District, describing the bounds and lines of the proposed district, fixed for the purpose of that election a valid precinct in which the citizens and qualified electors residing in Navarro and Ellis Counties could lawfully vote in Mertens in Hill County. Day v. State, 68 Texas, 541; Rhomberg v. McLaren, 2 Texas Civ. App., 391; Balch v. Fry, 85 S. W., 328; Constitution, 1876, art. 9, sec. 1, art. 5, sec. 15; Railway Co. v. Cornell, 84 Texas, 541; Linn v. Scott, 3 Texas, 57; Clark v. Goss, 12 Texas, 396; State v. Browning, 27 N. J. L., 527; Pontotoc v. Johnson, 59 S. W., 53; Trustees v. Young, 49 S. W., 28; Trustees v. Fishback, 49 S. W., 29.

*McClelland & Prince, Morrow & Smithdeal* and *C. L. Black,* for defendants in error.—The Legislature has the power to authorize the incorporation of an independent school district embracing parts of different counties, by an election held in one of the counties, under an order of the county judge of such county, and upon a petition of voters residing wholly within the county, and the court did not err in so holding. State v. Brownson, 94 Texas, 436; Black on Constitutional Law, 300.

The Mertens Independent School District was formed in substantial compliance with the law, and if not so, it was validated and made regular by the Act of 1905, School Laws, section 151, and the court did not err in so holding. Rev. Stats., art. 616a, as amended, Acts of 1897, page 45; Acts Special Session, 1901, page 28; Section 151, School Laws of 1905; State v. Brownson, 94 Texas, 436; Boesch v. Byron, 37 Texas Civ. App., 35; State v. Buchanan, 37 Texas Civ. App., 325; 26 Am. Eng. Encyc. of Law, 699; Nolan County v. State, 83 Texas, 182.

The Act of the Legislature (See Acts Special Session 1901, page 28) authorized the incorporation of an independent school district, such as Mertens, embracing parts of two or more counties. The Mertens Independent School District having been incorporated under the color of such authority, its corporate character can not be questioned or inquired into in a collateral proceeding, such as the one here maintained by appellants. Its invalidity, if any, could only be shown in a direct proceeding brought by the State for the purpose of testing the corporation. Acts, Special Session, 1901, page 28; El Paso v. Ruckman, 92 Texas, 866; White v. Quanah, 27 S. W., 839; Coast County v. Spring Lake, 36 Atl., 21; 20 Am. & Eng. Encyc. of Law, 1135.

The Constitution of this State does not prohibit the levy of a higher tax than twenty cents on the one hundred dollars valuation of property in an independent school district, such as the Mertens Independent School District. Constitution of 1876, art. 7, sec. 3; Amendment to Constitution, adopted August 14, 1883; Act of April 6, 1881, Gammel, vol. 9, page 206; Rev. Stats., art. 616a, 3999-4003.

The county judge of Hill County had the authority to order the election for the incorporation of the Mertens Independent School District and his authority in this regard was not affected by the fact that the petition for the election was signed only by persons residing in Hill County. Acts Special Session, 1901, page 28; Rev. Stats., art. 616a; Laws of 1897, page 45.

The county judge of Hill County, having possessed the authority to order the election for the incorporation of the Mertens Independent School District, and the territory to be incorporated having been described in the order for the election, the election order fixed a precinct of residence for all the voters in the territory to be incorporated and made the residents of Ellis County and Navarro County qualified voters for the election. Constitution, art. 6, sec. 2; Acts, Special Session, 1901, page 28.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

The plaintiffs in error, who are resident citizens of Hill, Ellis and Navarro Counties, in the territory called in the record the Mertens Independent School District, owning lands and other property therein subject to taxation, brought this action to enjoin the defendants, the school trustees for the district, from issuing bonds thereof in the sum of $5500 for the purpose of raising money for school purposes, and from levying a tax upon the property in the district to pay the same. Several reasons were set up why the issuance of the bonds and the levying of the tax should be restrained. Only one of them need be considered here and it rests upon the following facts: The village of Mertens is situated wholly in Hill County and the district is formed by including with it rural territory of which some is in Hill County, some in Ellis County and some in Navarro County. We shall assume that the Court of Civil Appeals correctly held that the formation of such districts, composed of parts of several counties, has the sanction of the Legislature, in the Acts of 1897 (p. 45), and of 1901 (pp. 28 and 29), amending article 616a of the Revised Statutes, and that the Mertens district has met all the requirements of these statutes. We are, nevertheless, of the opinion that counsel for plaintiffs in error are correct in their contention that the Legislature has no authority under the Constitution thus to authorize the disregard of county lines in the formation of school districts. The opinion of the Court of Civil Appeals very correctly states the rule by which the power of the Legislature is to be tested when it says: "The legislative department of a State Government may make any law not prohibited by the Constitution of the State or that of the United States. Therefore, the rule is that in order for the courts to hold an Act of the Legislature unconstitutional, they must be able to point out the specific provision which inhibits the legislation. If the limitation be not express, then it should be clearly implied." State of Texas v. Brownson, 94 Texas, 436. But we think the court fell into error when it assumed that the Constitution has imposed no limitations upon legislative action in the matter of creating school districts.

If the Constitution left the Legislature entirely free in providing

for a system of public schools, or if it contained no provisions limiting the power to create school districts, or if it expressly granted the unrestricted power to create them, the conclusion of the Court of Civil Appeals would be the correct one. But the Constitution does not stop with the provision that the Legislature shall "make suitable provision for the support and maintenance of an efficient system of public schools." It contains many limitations as well as express provisions, which, while conferring power to do some specified things, operate as denials of authority to do other things. Among the latter is the provision in the amendment of 1883: "And the Legislature may also provide for the formation of school districts *within* all or any of the counties of this State, by general or special law, without the local notice required in other cases of special legislation, and may authorize an additional annual ad valorem tax to be levied and collected within such school districts for the further maintenance of public school buildings therein; provided, that two-thirds of the qualified property taxpaying voters of the district voting at an election to be held for that purpose, shall vote such tax, not to exceed in any one year twenty cents on the one hundred dollars valuation of the property subject to taxation in such district, but the limitation upon the amount of district tax herein authorized shall not apply to incorporated cities or towns constituting separate and independent school districts." (Art. 7, sec. 3.) Of this amendment it was said in the case of The State v. Brownson, 94 Texas, 439: "Four Legislatures had assembled under the Constitution when this amendment was submitted to the popular vote, and it seems obvious that, when submitted, it was considered that under the then existing limitations upon the Legislature with reference to the public schools, the varied needs of special localities could not be met, and that the purpose of the provision quoted was to give the Legislature a free hand in establishing independent school districts." It was further said in that opinion: "The present Constitution as originally adopted, with but few exceptions, gave the Legislature unlimited power over the distribution and management of the school fund" (p. 439). Which is true; but it is not true that the Constitution gave or has ever given the Legislature unlimited power to levy or to authorize the levy of taxes to provide the school fund. On the contrary, the Constitution has, itself, said what the fund should consist of and how it may be raised, and the amendment of 1883, part of which is quoted above, made provision, in addition to that which had previously existed, for the purpose of increasing the fund, and granted the power to authorize local taxation in the school districts to be formed as provided for. While it may be true that before that amendment was adopted the Legislature had power to provide for the application of the school fund in localities as it should deem best, it does not follow that it had power to impose other school taxes, either generally or locally, than those specified in the Constitution.

In the Brownson case the court was considering the question whether or not the territory in an incorporated city or town could be included with other territory in an independent district formed for school purposes only, and this question was answered affirmatively.

There was no question as to including territory of more than one county, and in saying that the Legislature was given a free hand the court had no reference to the question. The language first quoted from that opinion shows that the court regarded the provision for the creation of school districts and investing them with the power of local taxation as intended to meet the varied needs of localities, which could not be met under the "then existing limitations." The amendment was adopted for the purpose of supplying a power which, it was assumed, the Legislature did not possess without it. This assumption doubtless arose from the fact that the Constitution undertook to provide and define specifically the sources from which was to be derived the revenue for the support of the schools, in such manner, it was thought, as to exclude the power the Legislature otherwise would have had to provide others by local taxation. Hence the power was given to make further provision than the Constitution itself made, by forming districts and investing them with the power of taxation to the extent prescribed. The language of the amendment is pregnant with the thought that it grants a power that did not, under the Constitution, exist without it. It is to authorize "an additional tax . . . for the further maintenance of public free schools." Being of this character, it is a provision which authorizes the doing of the prescribed things in the way defined and not otherwise. It is a rule for the construction of Constitutions, constantly applied, that where a power is expressly given and the means by which, or the manner in which, it is to be exercised is prescribed, such means or manner is exclusive of all others. (6 Am. & Eng. Ency. Law, 928, and cases cited.)

Undoubtedly the discretion granted as to locating school districts is broad, but it is not unlimited. By authorizing the creation of districts "within all or any of the counties" the Constitution impliedly commands that they be not created otherwise. We may no more reject these words than we may any others in the provision. When proper effect is given to them, no room is left for the application of the principle that the Legislature possesses unlimited power in forming the districts. This power is expressly given and is so defined as to exclude any broader one applicable to the formation of such districts. No definition can be given of the words of the phrase in question which will make them embrace districts not comprehended by the lines of any county but covering parts of several counties. Any construction that would do that would not only contradict the language of the amendment, but would leave the phrase under consideration without any operation whatever. For, if it had been intended to give power to locate districts without regard to the division of the State into counties, no reference to the counties would have been at all necessary. A provision thus unrestricted is found in article 16, section 23, in regard to the passage of laws for the protection of stock, while other provisions based upon the division of the State into counties abound throughout the instrument. The provision in question, therefore, is in thorough harmony with the general scheme devised for local government of almost every character. The State is divided into counties which are declared by

the Constitution to be legal subdivisions. With a few exceptions, that division is made to form the base of other divisions, both larger and smaller, made for the purposes of local representation and local government. So comprehensive is this conception that voters are required to reside for a specified time before elections in the counties where they are to vote and to vote in the election precincts of their residences, from which it follows that such precincts are to be in such counties or districts. Taxes are required to be assessed and paid in the counties where the property taxed is situated. What could be expected but that the Constitution, in providing for school districts, in which there are to be taxation and elections, should require such districts to be "within" counties, so that voters may vote and pay their taxes there? We do not mean to say that if there were authority for the creation of school districts embracing parts of several counties, these provisions concerning elections and the payment of taxes would necessarily apply to such districts; for it is probably true, as held by the Court of Civil Appeals, that the power to create them and to have elections and taxation in them would carry with it power to provide the necessary machinery. We are simply pointing out the consistent purpose to regard the counties which runs through the Constitution. Other provisions showing this are those which provide the available school fund. Money derived from State taxation, from the investment of proceeds of State school lands, etc., is to be "distributed to the several counties according to their scholastic population and applied in such manner as may be provided by law" (art. 6, secs. 5 and 8), and interest on proceeds of and other revenue derived from county school lands constitute part of the available fund of the counties to which the lands belong. (Art. 7, sec. 8.)

All of these provisions constitute reasons why the amendment in question required school districts to be within counties, for they show that in devising the school system, as in other schemes of local government, the people took the counties as the base. The provisions concerning the county fund are especially forceful in this direction. They contemplate the management and disbursement of the fund by the authorities in each county for the benefit of the children therein, while a law forming a school district embracing parts of other counties may operate to entrust the expenditure, at least, of the fund to authorities outside of the county to which it belongs. This is probably permitted, in one instance, by another provision of the Constitution which we now take up.

Section 10 of article 11 provides: "The Legislature may constitute any city or town a separate and independent school district." It is said by counsel for plaintiffs in error that this applies only to incorporated cities and towns. We are not prepared to agree to this, but the proposition is not essential to a decision of the case. We may assume for present purposes that the provision applies to all towns and cities, whether incorporated for municipal purposes generally or not. A city or town may be situated partly in one county and partly in another, or others, and we may concede that, notwith-

standing this, it may, as a whole, be made to constitute an independent school district. If this is true, it is because of the power so to treat towns and cities, and not because of the existence of the more general power to form school districts. The village of Mertens was not so situated as to make it at all necessary to the full exercise of this power that territory in Ellis and Navarro Counties should be incorporated with it. If the village was such as to entitle it to be created into a district by itself, which the Legislature might have power to determine, but which it seems not to have determined, this could have been done without encroaching upon other counties for the purpose. When it was desired to form a district including it and other territory in the way held to be permissible in State v. Brownson, *supra,* the additional territory could have been obtained in Hill County. The two provisions of the Constitution in regard to the creation of school districts may thus have full operation consistently with each other. A town or city may be treated as a whole, although lying in several counties, but this power does not displace the restriction made by the other provision upon the formation of districts other than towns and cities. The provision for towns and cities can not be allowed to have so broad an operation as to cause the defeat of the restriction imposed by the other provision, which would be the effect if it were held that in creating school districts of such cities and towns the Legislature may, at will and without limitation as to extent, include with them territory which is no part of them, in counties of which they are no part.

But it is urged that the attack of plaintiffs is upon the corporate existence of the Mertens school district in a collateral proceeding, and that the validity of such incorporation can be questioned only by the State in a direct proceeding. Such a proposition is often applied in favor of *de facto* corporations, and it is sometimes difficult to determine its exact scope and application. El Paso v. Ruckman, 92 Texas, 86; Brennan v. Bradshaw, 53 Texas, 331; Graham v. City of Greenville, 67 Texas, 62. Usually it is applied where the attack is because of some defect in organization under a law by virtue of which such a corporation could lawfully exist. Sometimes the attacking party sustains such relation to the corporation as to estop him from questioning its corporate existence, and there are other cases in which it is not essential to the protection of any right of his that inquiry should be made into the validity of the incorporation.

The rule is founded in public policy and convenience, merely, and is not to be so applied as to defeat the assertion of just legal rights by parties in the courts. It is said that it is essential to the doctrine that there be in existence a law in virtue of which such a corporation as that the party to the litigation claims to be might legally exist, and "that the rule is the same where there is only an unconstitutional law." Even this qualification of the rule seems to be subject to exceptions applicable in cases where the attacking party sustains certain relations to the alleged corporation or has no right of his own to be protected by allowing the inquiry. The doctrine is discussed and authorities extensively cited by Judge Thompson in 10 Cyc., 252-260. There is no need for a close examination of the rule in this

case. It may admit of serious question whether or not the Mertens Independent School District had acted as a *quasi* corporation sufficiently to have acquired a *de facto* existence in the sense of the rule when this litigation began. But be that as it may, the attack of the plaintiffs is not merely upon the corporate existence of the district, but is directed against the power of the defendants to lay burdens on their property and subject them to the payment of taxes. Surely they have the right to do that, although the reason they assign for the lack of power may also go to the right of the district to exist under the Constitution. Certainly a property holder has the right to say to the court that he is protected by the Constitution from the imposition of a tax by persons to whom the Constitution, in effect, denies such power. If the rule relied on by defendants should preclude plaintiffs from making the contention now, when and in what way could they make it? So far as we can see, the rule would equally apply to an effort to resist the collection of the tax by suit or otherwise. The consequence to which the contention leads is that, while the Constitution does not permit such a school district to exist and levy taxes, it may yet do both and force property owners to pay until the officers of the State see fit to intervene. Useful and convenient as is the doctrine invoked, we can not give our assent to an application of it which would deny to the plaintiffs the protection sought of their property rights. .

Two other questions were decided by the Court of Civil Appeals, viz.: (1) that the district had power to levy a tax of more than twenty cents on the one hundred dollars; and (2) that the election held for the levying of the tax and the issuance of the bond was void because the question to be voted upon was not properly stated in the order for the election. The first question is decided by this court in the opinion herewith rendered in the .case of Snyder v. Baird Independent School District; and a decision of the second question is rendered unnecessary by our more comprehensive holding.

As the District Court denied all relief and as the Court of Civil Appeals affirmed such action, insofar as it adjudged the Mertens Independent School District to be valid, and granted relief against the proposed issue of bonds and levy of tax only on the ground that the particular election was void, thus establishing the power of the defendants to levy taxes upon the plaintiffs' property through another election, the proper judgment to be here rendered is to reverse the judgments of both courts below and to adjudge that the defendants, for the reasons stated in this opinion, be enjoined and restrained from issuing the bonds and from levying the tax mentioned in the petition. This is the extent of the relief prayed for.

*Reversed and rendered.*