EAGLE LAKE INDEPENDENT SCHOOL DIST. v. HOYO. (No. 7447.)

(Court of Civil Appeals of Texas. Galveston. Nov. 14, 1917. Rehearing Denied Dec. 13, 1917.)

1. STATUTES ⬳8½(1)—SPECIAL ACTS—PUBLIC SCHOOLS—NOTICE.

Under Const. art. 7, § 3, declaring that the Legislature may provide for the formation of school districts by general or special law, without the local notice required in other cases of special legislation, and all such school districts whether created by general or by special law may embrace parts of two or more counties, and the Legislature shall be authorized to pass laws for the assessment and collection of taxes in all said districts, Sp. Act April 1, 1913 (Loc. & Sp. Acts 33d Leg. c. 138), creating a special school district and providing for assessments for school purposes, etc., though enacted without the notice required by Const. art. 3, §§ 56 and 57, is valid, the authority to provide for the formation of school districts including the power to make effective the creation and formation of such districts.

2. SCHOOLS AND SCHOOL DISTRICTS ⬳106—PUBLIC SCHOOLS—ASSESSMENTS—DEFENSES.

Though the maintenance tax levied for the newly created district was in part applied to the debts of the old district included in the new district, such fact does not warrant taxpayers in refusing to pay the assessment, but at most gives an action for unlawful diversion of the school fund.

3. CONSTITUTIONAL LAW ⬳42 — PUBLIC SCHOOLS—ASSESSMENTS—DEFENSES—CONSTITUTIONALITY OF STATUTE.

In an action on an assessment levied by special school district created by special act, a taxpayer may plead the unconstitutionality of the act.

4. STATUTES ⬳76(2) — SPECIAL DISTRICTS — VALIDITY.

Sp. Act April 1, 1913 (Sp. & Loc. Acts 33d Leg. c. 138), creating a special school district, and including therein a district already indebted which provided for the repeal of all laws and parts of laws in conflict therewith in so far as they may relate to it, cannot be held invalid as conflicting with a pre-existing general statute (Vernon's Sayles' Ann. Civ. St. 1914, art. 2856b) declaring that no school district shall be diminished, changed, or abolished while having outstanding against it an authorized debt.

Appeal from District Court, Colorado County; M. Kinnon, Judge.

Action by the Eagle Lake Independent School District against C. P. Hoyo. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

A. A. Gregory, of Columbus, and J. M. Woods and A. J. Wirtz, both of Seguin, for appellant. W. L. Adkins, of Columbus, for appellee.

GRAVES, J. This case involves alone the constitutionality of the special act of the 33d Legislature approved April 1, 1913, creating the Eagle Lake independent school district.

See chapter 138, Local and Special Laws 33d Legislature. The sole objection leveled against its constitutionality is that it was passed without the local notice required before the passage of special laws by sections 56 and 57 of article 3 of the Constitution of Texas. The trial court sustained this objection, and upon that ground only declared the act unconstitutional and void.

The case originated in the trial court through suit filed by appellant district against appellee to enforce collection of an ad valorum tax of 50 cents upon the $100 valuation of taxable property of the district, which its trustees had assessed and levied against his lands—lying within its bounds—for the support and maintenance of the public free schools therein for the year 1914, and to establish and foreclose a lien for that purpose; appellee resisted upon the ground that the district was without authority to thus levy tribute upon him and his lands, and had in fact no legal existence, in that the special law creating it was wholly void for the reason already stated; the court having upheld this view so declared, and entered its general judgment in favor of appellee and against appellant, from which the latter has appealed.

[1] The facts, for all needful purposes in passing upon the validity of the act, are practically undisputed. No local notice was given as prescribed in the sections of the Constitution above referred to; the trial court found as a fact, however, that all other provisions and requirements of the Constitution as well as statutes had been fully met, both in the creation of appellant district as such, and in the subsequent organization and procedure thereunder in seeking to require of appellee payment of the specified tax, and then concluded, as a matter of law, that it would be entitled to the judgment sought but for the court's holding that the act creating it was invalid, because passed without the requisite antecedent local notice; nor do either of the litigants question this fact finding, but part company solely upon the legal conclusion stated. After a careful consideration of the question, we conclude that the trial court erred in so striking down the act, and that it is not obnoxious to the objection urged against it.

We think that under the amendment of 1909 to our Constitution, appearing therein as section 3, art. 7, the local notice required by sections 56 and 57 of article 3 was not necessary for the creation of an independent school district and the investment of it with such powers as appellant here sought to exercise; the relevant part of that amendment is as follows:

"* * * And the Legislature may also provide for the *formation* of school districts by general or special law, without the local notice required in other cases of special legislation; and all such school districts, whether *created* by general or special law, may embrace parts of

two or more counties. And the Legislature shall be authorized to pass laws for the assessment and collection of taxes in all said districts, and for the management and control of the public school or schools of such districts, whether such districts are composed of territory wholly within a county or in parts of two or more counties. * * *"

We have italicized the words "formation" and "created" in order to emphasize the two different constructions put by the litigants here upon the provisions quoted. The appellant contends that the power thus given to create such a school district by a special law, without the local notice formerly required, included, and perforce carried with it, the necessary authority to make the districts effective for the purposes contemplated in their establishment and to equip them with the machinery for accomplishing those purposes, while, upon the other hand, the appellee very ably insists that the amendment by its terms plainly limited the Legislature's right to so act by special law to the formation alone of the school districts, and that it could go no further.

As directly applied to the situation here, the appellee's argument is that, since the special act creating appellant district went beyond its mere formation, and not only abolished the pre-existing district known as the independent school district of the city of Eagle Lake, but enlarged the bounds of that district so as to embrace appellee's lands, and then allowed the old district's assets taken over and its 20-year $15,000 bonded debt to be assumed by the new district, it exceeded the limits prescribed for such legislation, and was null and void. The act carried the provisions just recited, but they had all been submitted to a vote of the people of the new district and indorsed by an overwhelming majority before being put into effect. In substantiation of this construction put by him upon the provisions of the Constitution, appellee cites the following cases: Cummins v. Gaston, 109 S. W. 476; Parks v. West, 102 Tex. 11, 111 S. W. 726; Dallas County v. Plowman, 99 Tex. 509, 91 S. W. 221; Crabb v. Celeste Dist., 105 Tex. 194, 146 S. W. 528, 39 L. R. A. (N. S.) 601; Snyder v. Baird Dist., 102 Tex. 10, 111 S. W. 723, 113 S. W. 521; State v. Wofford, 90 Tex. 514, 39 S. W. 921.

But we do not think they furnish authority for his position. The leading case relied upon (Parks v. West) was decided in June, 1908, before the adoption of the amendment to the Constitution now under consideration; indeed, it is apparent that this amendment was adopted in response to that very opinion of our Supreme Court, along with others of similar import, in which it was held that, under the wording of the Constitution as it then stood, an independent school district could not include portions of two different counties, but must lie wholly within the same county; that was the only question involved in that case, and therefore the only one decid-

ed; but since that decision, and evidently to remedy the situation thereby brought about, as before stated, the present article 7, § 3, was added, liberalizing and enlarging the authority theretofore existing for the passage of such laws without prior local notice, and expressly permitting school districts created under them to include parts of two or more counties. Wherefore, it seems to us, that opinion cannot be considered authority for giving to the amendment thereby occasioned the very narrow and restricted effect it was intended to remedy and to broaden; especially does this appear so to us, and as indicating a proper construction of the present article 7, § 3, when the following expression from that opinion is considered:

"We do not mean to say that if there were authority for the creation of school districts embracing parts of several counties, these provisions concerning elections and the payment of taxes would necessarily apply to such districts; for it is probably true, as held by the Court of Civil Appeals, that the power to create them and to have elections and taxation in them would carry with it power to provide the necessary machinery."

Neither do we think the other cited cases furnish encouragement for a construction so strict and technical. If the contention of appellee, that the only local or special legislation authorized by article 7, § 3, was the mere formation of school districts without the local notice otherwise required, be sound, then the Legislature could do no more by general law, because that part of the provision is:

"And the Legislature may also provide for the formation of school districts by general or special law, without the local notice required in other cases of special legislation."

It seems to us clear that the Constitution, by this very simple and plain language, confers on the Legislature the power to make any provisions for such school districts by special law, without the local notice, that it might make with it, or by general law.

In the Cummins v. Gaston Case the Legislature had established a school district by special act, and had conferred on it the power to tax at the rate of 75 cents on the $100 valuation, which was in excess of the rate of taxation then permitted by the Constitution. In a suit brought to enforce the collection of the tax, the court held that the collection of an unconstitutional tax could not be enforced. The substance of the holding is as follows:

"We therefore conclude that, were the act in question constitutional and valid in other respects hereinbefore considered, the board of trustees acting thereunder could not legally levy a tax for the maintenance of the public schools and the erection of improvements in said * * * district in excess of 20 cents on the $100.00 valuation."

It is true the court further held that the indebtedness of the old district could not be transferred to the new, but the point does not seem to have been necessary to the deci-

sion. To like effect is the holding of the Supreme Court in the case of Snyder v. Baird Ind. School District, wherein the court disposes of a certified question as follows:

"We answer that so far as it attempts to empower the school district to levy a tax exceeding 20 cents on the $100.00 valuation of property situated therein 'for the maintenance of public free schools and the erection of school buildings,' the act * * * is in violation of section 3, art. 7, of the Constitution of this state."

Both these latter cases also were decided in 1908, before section 3, art. 7, was so amended, and when the taxation rate was limited to 20 cents upon the $100 instead of 50 cents as at present, and no doubt both contributed, together with Parks v. West, to the changes made in the amendment of 1909. In each of those three cases the court was discussing the limitations, either express or by plain implication, contained in the Constitution as then worded against the exercise of the authority therein shown to have been attempted, in each instance holding that such restrictions existed.

The holding in the next case relied upon by appellee (Dallas County v. Plowman) is, we think, directly counter to the rule of construction he contends for. There the Supreme Court held that the phrase 'maintenance of public roads' in article 8, § 9, of the Constitution, amendment of 1890, authorizing the Legislature to pass local laws for such purpose, included in its scope the laying out, opening, and construction of new roads as well as the repairing of those already laid out; and that the meaning of the word "maintenance" as used in this amendment was not restricted as when used in the older article 3, § 56, subd. 5, by its context, to the keeping up of roads as distinguished from the laying out and opening of them, nor was it confined to its narrow and literal construction; but it must be held to embrace all the things necessary to accomplish the obvious purpose of the amendment, including the opening as well as repairing of roads, the court's language being:

"But the paragraph of section 9, article 8, above quoted, was not a part of the original section; it was added by amendment in the year 1890, for the evident purpose of conferring upon counties the power to lay out, construct and maintain, better systems of public highways than they were able to do under the restricted taxation before provided for; and * * * the purpose of the Legislature in making the amendment was to increase the capacity of the county to maintain a system of public roads, and the word 'maintenance' must be held to include all of the things necessary to be done to accomplish that purpose."

In the remaining case of Crabb v. Celeste Independent School District, the only question properly before the Supreme Court, and therefore the only one determined, was that an independent school district which has voted a tax for school purposes cannot, under article 3, § 7, of the Constitution, by a subsequent extension of its limits to include additional territory, made in the manner prescribed by law, acquire the right to levy such tax on property in the added territory, without further election by the qualified voters of the district as extended to determine that question.

But no such conditions as those underlying the decisions just reviewed exist here, nor can they be applied to the facts of this case, for the amount of tax herein sought to be enforced is within the limit now prescribed and the new district voted upon it, as required by section 3 of article 7 of the Constitution.

[2] Appellee insists, however, notwithstanding the fact that the new or extended district voted overwhelmingly in favor of levying the 50-cent tax upon all lands therein, that its right to assume the bonded debt of the old district, which carried, as the means of its ultimate retirement, a 15 per cent. annual tax on the property of the old district, amounted by indirection, and without a vote of the new district upon it, to burdening all property therein with a tax of 65 cents, more than the constitutional limit, and that part of the maintenance tax so levied upon the new territory for the year 1914 was segregated and applied to this bonded indebtedness of the old.

But the answer to these contentions is twofold. In the first place, it was not shown that the new district had ever in fact assumed this indebtedness, and the trial court found as a fact that "the tax of 15 cents on the $100 valuation for the payment of interest and providing a sinking fund for the redemption of the schoolhouse bonds issued by the old district has never been levied or assessed against the new territory embraced in the new district by the special act"; second, we do not think it appears from the evidence that any part of the 1914 maintenance tax upon the new district was actually applied upon the bonded debt of the old one, nor if it had been, that such fact alone would have invalidated an otherwise lawfully laid tax, and have given appellee a valid ground for resisting its payment; for, at most, such action would have amounted to an unlawful diversion from its proper application of a school fund legally voted, assessed, and collected, and this would not, as just stated, have afforded appellee any reason for refusing to pay it, but might have given him, or any other interested taxpayer of such district, the right to stop by injunction or other process such unlawful use of the fund.

[3] In this connection we are unable to agree with appellant that appellee could not, in this action, plead the unconstitutionality of the special act in question as a reason for refusing payment of what he claimed was an unlawful burden upon his property, but that such question could only be raised by a quo warranto proceeding in the name or by authority of the state; his attack upon the

law was not merely directed against the existence of the school district as such because of irregularities in the proceedings under which it was constituted, but went further and asserted the fundamental lack of power in the Legislature by means of it to lay the burden of a tax upon his property. We think this question was settled adversely to appellant's contention by the Supreme Court in Parks v. West, 102 Tex. 18, 111 S. W. 726, where Judge Williams, speaking for the court, uses this language:

"But be that as it may, the attack of the plaintiffs is not merely upon the corporate existence of the district, but is directed against the power of the defendants to lay burdens on their property and subject them to the payment of taxes. Surely they have the right to do that, although the reason they assign for the lack of power may also go to the right of the district to exist under the Constitution. Certainly a property holder has the right to say to the court that he is protected by the Constitution from the imposition of a tax by persons to whom the Constitution, in effect, denies such power. If the rule relied on by defendants should preclude plaintiffs from making the contention now, when and in what way could they make it? So far as we can see, the rule would equally apply to an effort to resist the collection of the tax by suit or otherwise. The consequence to which the contention leads is that, while the Constitution does not permit such a school district to exist and levy taxes, it may yet do both and force property owners to pay until the officers of the state see fit to intervene."

[4] The final objection to the validity of the act was that it conflicts with a pre-existing general statute of the state (article 2856b, Vernon's Sayles' Revised Statutes), providing that no such district shall be diminished, changed, or abolished while it had outstanding against it an authorized debt either of bonds or in other form; but that difficulty is met by the fact that its concluding section expressly repeals all laws and parts of laws in conflict wtih this act, in so far as they may relate to it.

Holding as we thus do that no constitutional inhibition against the power thus sought to be exercised by the special act here involved was pointed out, we think the Legislature had the authority to create the new district through that act, without local notice, and that such authority carried with it the right to annex the added territory, abolish the old district, provide for the payment of its bonded indebtedness and the disposition of its property, and to do such other things as were necessary to carry out the purposes contemplated in erecting the new one. Dallas County v. Plowman, 99 Tex. 513, 91 S. W. 221; Madry v. Cox, 73 Tex. 538, 11 S. W. 541; Cohen v. City of Houston, 176 S. W. 813.

From what has been said, it follows that so much of appellant's different assignments as challenge the correctness of the trial court's judgment holding the special act in question unconstitutional must be sustained, and that such judgment must be reversed and judgment here rendered for appellant in all things as prayed for by it below; and it has been so ordered.

Reversed and rendered.