### MILLER et al. v. DAVIS et al.

### No. 2263.

Court of Civil Appeals of Texas. Waco.

Dec. 31, 1940.

Rehearing Denied Jan. 30, 1941.

Winfrey & Goldberg, of Dallas, for appellants.

Tom L. Tyson, of Corsicana, for appellees.

TIREY, Justice.

This suit was brought by the independent executors without bond of the last will and testament of Frank Neal Drane, deceased, to ascertain the judicial construction, under said will and codicil, of their duties and obligations to the defendants Jake Miller, Mrs. Jennie E. Puckett, Cisco Dansby and Meritt Drane, beneficiaries under said last will and testament. The case was tried before the court without a jury, and from the judgment entered, Jake Miller and Meritt Drane have appealed.

Because of the questions involved, a comprehensive statement is necessary. Frank Neal Drane executed his last will and testament on March 5, 1938, and thereafter a codicil on May 12th. Same disposed of an estate of the approximate value of $800,-000. The will disclosed that the dominant purpose of the testator was to establish a charitable trust for the use and benefit of

public charities specifically named in the will. He specified that it should be called "Navarro Community Foundation," and that it should be administered by a self-perpetuating board of managing trustees and their successors. The testator's intention and purpose are perhaps better expressed in Item 7 of the will: "Item Seven. It is my desire, plan and purpose to achieve the formation of such Foundation while I yet live, and I am even now making progress in the execution of this long cherished purpose, which I earnestly desire to consummate during my lifetime. If, however, death should deprive me of the privilege of promulgating this Foundation, then it is my will and purpose that my Executors, as herein provided, shall give effect to my long cherished desire to devote and dedicate the residue of my estate to the purposes herein expressed, and themselves create such Foundation, either noncorporate or corporate."

The will further provided: "The object and purpose of the creation of said Foundation, non-corporate or corporate, is that the net income and corpus, either or both, of the Foundation, after the discharge of liabilities for annuities or otherwise shall be used * * *" exclusively for public charities specifically enumerated. Item 5 provided for annuities to the appellants and other beneficiaries, and the pertinent parts thereof are as follows:

"The Managing Trustees of the Foundation, whether non-corporate or corporate, with the funds and properties belonging to me and composing my estate, and which shall be transferred, set over, assigned and delivered to them, shall provide for and pay the following life annuities in the order named:

"(a) A life annuity to yield to my sister-in-law, Mrs. Jennie E. Puckett, $50.00 per month, and at her death to provide for the expenses of her last sickness and burial;

"(b) A life annuity to yield my longtime employee at Arcady, Jake Miller, $50.-00 per month, if at my death, he is still in my employ and if he shall elect to continue in the employ of the Foundation, such payments to begin upon Jake's becoming incapacitated for service, or if and when relieved from service by the Executors or Trustees, as the case may be, and such payments shall continue until his death;

"(c) A life annuity to yield $100.00 per month each, to my spouse, if in a re-

mote contingency I should have one, and a nurse, if I should employ one on a permanent basis to attend and serve me during my remaining years and designate such nurse to receive such annuity, or within the discretion of the Trustees if I fail to so designate—conditioned, further, that such nurse shall remain continuously in my employ from the time of entering such service until my demise;

"(d) A life annuity to yield $100.00 per month to my brother, Meritt Drane;

"If, in any event, the amount reserved by my Executors out of my estate for the payment of the above-mentioned and named annuitants be insufficient to pay all of them in full, then I hope and pray that Executors and/or Trustees may make such payments out of the benevolent residue of my estate then in existence, under the provisions of its Articles of Association or Charter for strictly personal charity.

\* \* \* \* \* \* \*

"The trustees will next pay in cash, or its equivalent, unto my son, Hugh Albert Drane, Sr., the sum of One Dollar ($1.00), and unto my grandson, Hugh Albert Drane, Jr., the sum of Twenty-five Hundred Dollars ($2,500.00); but if either or both of them shall predecease me, then the legacy to such predeceasing legatee shall ipso facto be canceled and reverted to my estate. In this connection I further direct that if either my son or my grand-son shall contest this Will, or undertake to prevent its being probated, or institute any action to annul the same, or contest the disposition of my property, or any part thereof, made hereunder; or if they, or either of them, should fail or refuse to restore back to me or to my estate, upon demand, the life insurance policies upon my own life and heretofore assigned by me, which are mentioned above, upon refund of premiums paid by them, or either of them, or Dorothy, then either one or all of such happenings or nonhappenings shall, in themselves, operate to and shall ipso facto forfeit as to both my son and grand-son the bequests herein given them, which forfeited bequests shall be thrown back into the corpus of my estate and used for the purposes herein expressed."

The codicil canceled sections (c) and (d) of Item 5 of the will. It provided for his spouse, if he had one, and a nurse attendant, if he employed one, substantially as the testator did in section (c), save and except it provided that the monthly pay-

ment to each should be in such sums and amounts as his executors in their sole discretion may determine. (He did not leave a spouse.) The codicil further provided: "Now, with particular reference to my brother, Meritt Drane, it is my will, and I do hereby direct that 'my executors shall pay to him during the term of his life a monthly stipend or annuity of not more than Fifty Dollars ($50.00) per month * * *." The will was further amended by the codicil in the following manner: "The legal title to all of the property, real, personal and mixed, of which I may die seized and possessed, shall immediately upon my death vest in my executors, upon trust, however, that the same shall in due course be delivered to the trustees of the Foundation, as provided in my will, or be otherwise disposed of and delivered, as provided in my said will."

Thereafter, the testator, on May 28, 1938, executed to and with B. Lynn Davis and eleven others articles of association of the Navarro Community Foundation, which articles of agreement voluntarily associated the testator to and with B. Lynn Davis and others for the purpose of creating a non-profit, self-perpetuating foundation, which they designated and named "Navarro Community Foundation," domiciled at Corsicana, Navarro County, Texas. The purposes stated in the articles of association were substantially as stated in Item 7 quoted.

On May 28, 1938, the testator resigned as a Trustee of said Foundation and his resignation was accepted and a successor was elected. Thereafter, on the same day, the testator executed and delivered a deed of conveyance to Navarro Community Foundation, whereby he conveyed and set over to said Foundation the whole of his property, save and except certain reservations which he made to what he called "book-credit-deposit" of $350,000. On May 11, 1939, the Governor approved House Bill 987 (a special Act of the Legislature, Vernon's Ann.Civ.St. art. 3263b), which created and established a perpetual, public, charitable, non-profit body corporate to be denominated "Navarro Community Foundation," domiciled at Corsicana, Navarro County, Texas. Said Act empowered said Foundation to extend its aid to any one or more or all of certain public, charitable purposes specifically named therein. Said Foundation has conducted its affairs as a corporate body since its creation as such by said legislative act.

The trial court found in favor of Jake Miller as to the facts upon which his annuity matured and became operative, and that he was entitled to receive the sum of $50 per month for the remainder of his natural life. The court awarded to Meritt Drane the cash stipend of $50 per month for life in preference to the alternate provisions in the codicil (he having stated in open court that he preferred the monthly cash stipend). Said judgment also fixed and awarded to Cisco Dansby, the nurse, a monthly stipend of $100 per month for the remainder of her natural life. The judgment validated the claim of Mrs. Jennie E. Puckett against said estate and awarded to her the sum of $50 per month during the term of her natural life, together with the reasonable and actual expenses and costs incident to her last illness and proper burial, and she did not appeal. The judgment authorized the executors of said estate to procure and deliver to each of the defendants, Jake Miller, Meritt Drane and Cisco Dansby, at the cost and expense of the estate of Frank Neal Drane, deceased, an annuity contract, issued, executed and delivered by a life insurance company authorized to do business in the state of Texas, having ample legal reserves to safeguard and protect its undertakings, properly invested in securities approved by the Board of Insurance Commissioners of the State of Texas, and operating under the supervision of the Department of Insurance of the State of Texas, by the terms whereof such life insurance company irrevocably and unconditionally binds and obligates itself to pay to each of the defendants said monthly stipends during the remainder of each defendant's natural life; the remainder, if any, due upon such annuity contract at the death of each defendant to revert to and become the property of Navarro Community Foundation. Said judgment further provided that upon the delivery to said defendants of the annuity contracts aforesaid, together with the accruals of the respective amounts awarded to each defendant per month since the death of testator and the acceptance of same by said defendants, or either of them, shall neither have nor assert any further claim, demand or cause of action against the estate of Frank Neal Drane, deceased, or its successors. Said judgment discharged the plaintiffs and Navarro Com-

munity Foundation of and from all further liability, claim or demand. Said judgment further provided that said Navarro Community Foundation, upon demand of plaintiffs, shall deliver to the plaintiffs whatever sum of money as may be necessary to enable them to comply with and execute the judgment entered, together with all costs. The judgment further provided that after the executors of the estate of Frank Neal Drane had paid all the lawful debts, expenses and charges for which said estate may be liable, whatever sum of money, if any, that remained unexpended out of the original book-credit-deposit of $350,000 reserved by said Frank Neal Drane in his conveyance to the trustees of and for the Navarro Community Foundation shall revert to and vest in said Navarro Community Foundation.

■ It appears that the defendant Cisco Dansby voluntarily appeared and filed a written answer in which she asked the court that the award made to her be satisfied by the procurement and delivery to her by the executors of a life insurance company's annuity contract and she did not appeal therefrom. The claims of defendants Puckett and Dansby are in nowise or manner dependent or interwoven with the claims of Jake Miller and Meritt Drane, and since Puckett and Dansby have not appealed, the judgment of the trial court as to these defendants should be in all things affirmed. Adams v. Houston Nat. Bank, Tex.Com.App., 1 S.W.2d 878; Burke v. Cruger, 8 Tex. 66, 67, 58 .Am.Dec. 102; Hamilton v. Prescott, 73 Tex. 565, 11 S.W. 548; Stanton v. Security Bank & Trust Co., Tex.Com.App., 244 S.W. 593; 3 Tex. Jur. sec. 810, p. 1150, sec. 812, p. 1153.

■■ Appellants have assailed the construction placed on the will and codicil by the court authorizing the executors to purchase the annuity contracts from a life insurance company for each of them and providing that upon acceptance of these contracts that the estate of Frank Neal Drane and said Foundation would be released from all further liability. We think this contention must be sustained. The provision as to Jake Miller is found in Item 5 of the will and the general clause therein specifies "shall provide for and pay the following life annuities in the order named: * * *". Then follows the bequests as hereinbefore set out. The codicil canceled subsection (d) of the will (which made provision for Meritt Drane),

and with reference to him provided: "Now, with particular reference to my brother, Meritt Drane, it is my will, and I do hereby direct that my executors shall pay to him during the term of his life a monthly stipend or annuity of not more than Fifty Dollars ($50.00) per month * * *."

It will be observed that the above provision provides: " * * * my executors shall pay to him during the term of his life a monthly stipend or annuity of not more than Fifty Dollars ($50.00) per month * * *." Unquestionably the foregoing language fixed responsibility on the executors to pay to Meritt Drane the sum of $50 per month during the term of his life and we know of no authority that can force Meritt Drane to accept another paymaster and discharge the executors of the estate of Frank Neal Drane from further liability. It is true that the codicil authorized the executors within their sole discretion and judgment to provide a farm home suitable in size and location in lieu of the monthly stipend for Meritt Drane, but it did not provide for any other substitution. The codicil did not in any manner modify or change the general provision in Item 5 which made provisions for Jake Miller and which general provision, among other things, expressly stated: " * * * shall provide for and pay the following life annuities in the order named * * *." This language is susceptible of but one interpretation: First of all, the duty to provide; and second, the duty to pay. "The cardinal rule of testamentary construction has been declared to be to ascertain the intent of the testator and give its effect, and it is said that such intention, when ascertained, will control any arbitrary rule." Darragh v. Barmore, Tex. Com.App., 242 S.W. 714, 716, point page 716; Briant v. McGown, Tex.Civ.App., 15 S.W.2d 1110, point page 1112; Cleveland v. Cleveland, 89 Tex. 445, 35 S.W. 145. In connection with Item 5, the testator further provided: "If, in any event, the amount reserved by my Executors out of my estate for the payment of the above-mentioned and named annuitants be insufficient to pay all of them in full, then I hope and pray that Executors and/or Trustees may make such payments out of the benevolent residue of my estate then in existence; under the provisions of its Articles of Association or Charter for strictly personal charity."

Now the codicil further expressly provided: "The legal title to all of the property, real, personal and mixed, of which I may die seized and possessed, shall immediately upon my death vest in my executors, upon trust, however, that the same shall in due course be delivered to the trustees of the Foundation, as provided in my will, or be otherwise disposed of and delivered, as provided in my said will. * * *"

We think that a careful consideration of the will and codicil shows that the terms "executors" and "managing trustees" seem to have been used interchangeably in the will. It therefore appears that the testator intended that his executors should provide for and pay the monthly stipends or annuities to the named appellants out of what he termed the book-credit-deposit of $350,000. The executors have plenary powers to provide and pay these monthly stipends in such manner as their discretion may dictate; but they do not have the right to substitute another paymaster in lieu of themselves and require the annuitants to accept such new paymaster and release the estate from all further liability. We are therefore of the opinion that the judgment of the trial court, wherein it is provided that upon acceptance of the annuity contracts by said named beneficiaries the estate of Frank Neal Drane and its successors would be released from all further liability, is erroneous, and for that reason that provision of said judgment must be set aside and to that extent reformed.

Appellants' next proposition is that since neither the Attorney General of Texas, who is the legal representative of public charities in this state, nor Trinity University, Hugh Albert Drane, Sr., or Hugh Albert Drane, Jr., were parties to the suit, and all of them being necessary parties the court erred in rendering any judgment construing the will of Frank Neal Drane. We overrule this contention. We think the rule is: "The Attorney General is a proper party defendant as representing the public interest, yet that officer is not a necessary party to a bill for the instructions of the court as to the administration of a public charity, when the gift is in the hands of trustees charged specifically by the donor with its management for the cestui que trust, and no charges of waste or mismanagement are made against them." 11 C.J. p. 369. 14

C.J.S., Charities, § 62. We think this rule is applicable to the facts in this case. The only questions involved in the construction of the will and codicil related to the payment of the annuities provided for Mrs. Puckett, Jake Miller, Cisco Dansby and Meritt Drane, and particularly as to whether or not testator intended for the executors to make provision for payment of said annuities to said beneficiaries aforesaid out of the book-credit-deposit reserved by the testator, or whether the same should be paid by the Managing Trustees of the Foundation. The will and the codicil made the annuities for each of the above-named annuitants a first and prior charge upon his estate in the order named. The Attorney General, Hugh Albert Drane, Sr., and Hugh Albert Drane, Jr., are not interested unless it is contended that the executors have abused their discretion to their detriment, and no such claim is here made. Moreover, Hugh Albert Drane, Sr., was left a bequest of $1, and, of course, he had no substantial interest in the estate. Cousins v. Cousins, Tex.Civ.App., 42 S.W.2d 1043, writ refused. Hugh Albert Drane, Jr., was given a bequest of $2,500, subject to the conditions set out in Item 5 of the will. The record is undisputed that out of the book-credit-deposit reserved by the testator in his deed to the Foundation there was still on hand a sum in excess of $300,000, and since the judgment entered in the trial court, among other things, expressly provided " * * * and when plaintiffs, as executors of the estate of Frank Neal Drane, deceased, have paid all lawful debts, expenses and charges for which said estate may be liable, that whatever sum of money, if any, that may remain unexpended out of the original book-credit-deposit of $350,000 * * * shall revert to and vest in and become absolutely the property of Navarro Community Foundation," it therefore appears to us that the Dranes come within the exception to the general rule of necessary and indispensable parties to the construction of a will, because their rights are in no event prejudiced by the provisions of the decree. 69 C.J. 882, § 2015; Stuart v. United States National Bank, 86 Colo. 259, 280 P. 882; Fidelity Union Trust Co. v. Ackerman, N.J.Ch., 121 N.J.Eq. 497, 191 A. 813, point page 821. Their claims are subordinate and inferior to the claims of Puckett, Dansby, Jake Miller and Meritt Drane, and the Dranes are at liberty to make demand

of the executors for the payment of their respective bequests.

■ Trinity University is in no sense a beneficiary under the last will and testament of Frank Neal Drane. It is true that there was a bequest left to it under the provisions of Item 8 of the will, but said Item was a conditional provision that provided for the disposition of the estate in the event that he did not live to create the Foundation, or if his executors, after his death, should decide not to create the Foundation, and inasmuch as the testator did live to create the Foundation, this contingency did not happen and therefore Trinity University could in no event be a legatee under the will and therefore was not a necessary or indispensable party.

■ Appellants contend that House Bill 987, creating the Navarro Community Foundation, is unconstitutional and that since the trustees of said Foundation, an unincorporated trust, are not parties to the suit, and, being necessary parties, that the court erred in rendering any judgment construing the will of Frank Neal Drane. These contentions cannot be sustained. We think the rule is that a corporation, though organized and acting under an unconstitutional special charter, is nevertheless a de facto corporation, and that the state only can inquire into the validity of the charter. McTighe v. Macon Construction Co., 94 Ga. 306, 21 S.E. 701, 32 L.R.A. 208, 47 Am.St.Rep. 153; 13 Am. Jur. 196. The general rule is "that the legality of the existence of a de facto corporation can be questioned only by the State in a direct proceeding and cannot be collaterally attacked or litigated in actions or proceedings between private individuals or other corporations, or between them and the alleged corporation itself." Commercial Standard Ins. Co. v. Nelson Mortgage Co., Tex.Civ.App., 138 S.W.2d 169, point page 173; 14 C.J. 204, § 216, 18 C.J.S., Corporations, § 94. "A corporation de facto * * * is * * * not a corporation legally constituted, but a corporation organized and operated under color of the law." American Salt Co. v. Heidenheimer, 80 Tex. 344, 15 S.W. 1038, 1039, 26 Am.St.Rep. 743; 14 C.J. 167, § 172; 18 C.J.S., Corporations, § 76; Parks v. West, 102 Tex. 11, 111 S.W. 726, point page 729; Rutherford v. Watson, Tex.Civ. App., 52 S.W.2d 85, par. 5, error refused; Brennan v. City of Weatherford, 53 Tex.

330, 37 Am.Rep. 758; 10 Tex.Jur. pp. 631, 632, 633, §§ 39 and 40. The Foundation was a party defendant to the suit in its corporate capacity and there was proof of user or the exercise of corporate powers under its charter. Certainly it was acting as a corporation under color of authority. The appellants did not raise any question in the court below as to the corporate existence, R.S. art. 1999, nor as to defect of parties to the suit to construe the will, and they cannot collaterally attack the constitutionality of the special act creating the Foundation as a body corporate under the well-established rules of our courts. Our Supreme Court, in the case of Parks v. West, supra [102 Tex. 11, 111 S.W. 729], said: "* * * the validity of such incorporation can be questioned only by the state in a direct proceeding. * * * There are other cases in which it is not essential to the protection of any right * * * that inquiry should be made into the validity of the incorporation. The rule is founded in public policy and convenience, merely, and is not to be so applied as to defeat the assertion of just legal rights by parties in the courts. It is said that it is essential to the doctrine that there be in existence a law in virtue of which such a corporation as that the party to the litigation claims to be might legally exist and 'that the rule is the same where there is only an unconstitutional law.'" It is certain that it was the testator's intention that appellants should be provided for by the executors out of the $350,000 book-credit-deposit before it passed to the Foundation, and, that being true, appellants in no event are in position to question the legality of the corporate existence of the Foundation; and all propositions relating thereto are overruled.

We have carefully considered each of the other assignments and, in our opinion, no error is presented and each is overruled.

That part of the judgment of the trial court, wherein it is provided that upon delivery of the annuity contracts of an insurance company to the said Jake Miller and Meritt Drane and the acceptance of the payments thereunder by them said legatees shall be forever barred from any further claim against said estate, is hereby set aside. The judgment of the trial court in all other respects is affirmed. Reformed and affirmed.